THE PEOPLE OF THE STATE OF NEW YORK ex rel. M. WINE-BURGH ADVERTISING COMPANY, Respondent, *v.* EDWARD S. MURPHY, as Superintendent of Buildings for the Borough of Manhattan, City of New York, Appellant.

**Municipal corporations — constitutional law — ordinance limiting the height of advertising signs on roofs of buildings.**

Under the police power municipalities may make and enforce such reasonable restrictions and prohibitions upon the right to use private property as are necessary to guard public health, morals and safety and to conserve public peace, order and the general welfare.

An ordinance which purports to legislate for public safety must tend in some appreciable way to that end. Unless there is a substantial connection between the assumed purpose of the ordinance and the end to be accomplished such ordinance is unenforceable.

A municipality, in enacting ordinances relating to the safety of the public, may make reasonable classifications among structures with reference to their location and the necessity or importance thereof without offending against the provisions of the 14th amendment of the Federal Constitution. But the classification, as well as the ordinance itself, must be based upon some necessity justifying the exercise of the police power.

A municipal ordinance limiting the height of billboards or "sky signs," erected on the roofs of buildings upon private property for the display of advertisements, to nine feet above the front wall of the building and prohibiting the erection of higher signs, no matter how well secured, is arbitrary and unauthorized where it appears from the ordinance itself that it was not enacted in the interest of public health, morals or safety, or for any other purpose within the police power, but simply to prevent or restrict the display of advertisements.

*People ex rel. Wineburgh Advertising Co.* v. *Murphy*, 129 App. Div. 260, affirmed.

(Argued February 9, 1909; decided March 30, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 23, 1908, which reversed an order of Special Term denying a motion for a peremptory writ of mandamus and granted said writ.

The facts, so far as material, are stated in the opinion.

*Francis K. Pendleton*, Corporation Counsel (*Theodore Connoly* and *Clarence L. Barber* of counsel), for appellant. The ordinance does not contravene any provision of the Constitutions, either State or Federal. (*Home Tel. Co.* v. *Los Angeles*, 211 U. S. 205; N. Y. Const. art. 1, §§ 1, 6; U. S. Const. [14th amend.] § 1; *Wright* v. *Hart*, 103 App. Div. 218; *People* v. *Supervisors of Orange County*, 17 N. Y. 235; *People* v. *N. Y. C. R. R. Co.*, 24 N. Y. 485; *People ex rel. Powell* v. *Supervisors of Nassau*, 54 Misc. Rep. 323; *Ex parte McCullim*, 1 Cow. 450; *Wright* v. *Hart*, 103 App. Div. 218; *Hayes* v. *Missouri*, 120 U. S. 68; *People ex rel. Armstrong* v. *Warden of City Prison*, 183 N. Y. 223; *Matter of Morgan*, 114 App. Div. 45.) The restriction upon the height of sky signs was a simple, necessary and proper exercise of police power. (Cooley's Const. Lim. [7th ed.] 11, 831; *F. Co.* v. *Hyde Park*, 97 U. S. 667; *Watertown* v. *Mayo*, 109 Mass. 318; *Mugler* v. *Kansas*, 123 U. S. 663; 1 Dillon on Mun. Corp. §§ 141–143; *Crowley* v. *Christensen*, 137 U. S. 89; *U. B. Co.* v. *P. C. Co.*, 111 U. S. 761; *Barbier* v. *Connolly*, 113 U. S. 31; *P., etc., Co.* v. *Hood*, 94

Fed. Rep. 618; *Matter of Wilshire,* 103 Fed. Rep. 624; *Stuyvesant* v. *Mayor, etc.,* 7 Cow. 607 ; *Baker* v. *Boston,* 12 Pick. 183.)

*Louis Marshall* for respondent. Section 144 of the Building Code, in so far as it attempts to limit the height of sky signs to nine feet, is unreasonable and oppressive, and, therefore, void. (1 Dillon on Mun. Corp. [3d ed.] §§ 319–332 ; *Mayor, etc.,* v. *Thorne,* 7 Paige, 261 ; *Mayor, etc.,* v. *D. D. R. R. Co.,* 133 N. Y. 104 ; *Fire Dept.* v. *Gilmour,* 149 N. Y. 453 ; *Comm.* v. *B. A. Co.,* 188 Mass. 348 ; *People* v. *Green,* 85 App. Div. 400 ; *City of Chicago* v. *Gunning System,* 214 Ill. 628 ; *P. P. S. Co.* v. *Atlantic City,* 58 Atl. Rep. 342 ; *Passaic* v. *P. B. P., etc., Co.,* 72 N. J. L. 285 ; *Crawford* v. *City of Topeka,* 51 Kan. 670 ; *Western Co.* v. *Knickerbocker Co.,* 103 Cal. 111 ; *Bryan* v. *City of Chester,* 212 Penn. St. 259.) The ordinance restricting the height of sky signs to nine feet, and the charter, if construed to authorize the enactment of the ordinance, are unconstitutional, because in conflict with sections 1 and 6 of article 1 of the Constitution of the state of New York and with the 14th amendment to the Federal Constitution. (*S. C. Co.* v. *S. P. R. R. Co.,* 118 U. S. 394; *L. S., etc., R. R. Co.* v. *Smith,* 173 U. S. 684; *Wynehamer* v. *People,* 13 N. Y. 378 ; *People ex rel. M. S. Inst.* v. *Otis,* 90 N. Y. 48 ; *Matter of Jacobs,* 98 N. Y. 98 ; *People* v. *Gillson,* 109 N. Y. 384 ; *People* v. *Green,* 85 App. Div. 400.)

CHASE, J. The relator is a domestic corporation engaged in the business of constructing and maintaining advertising signs and displaying thereon advertisements pursuant to contracts with advertisers.

On June 15, 1908, the relator duly filed an application for a permit to erect a sky sign on the top of a building at 27 East Twenty-second street, in the city of New York, and such application was accompanied by a plan thereof in detail, and also with the consent of the owner of the real property

on which it was proposed to erect the sign. From such application and the accompanying papers it appears that the building upon which it is proposed to erect the sign is an office building ten stories in height, and that it is proposed to erect the sign in compliance with the ordinances and regulations of the city of New York except that the proposed sign is more than nine feet in height above the front wall or cornice of the building. The proposed sign would be five feet six inches above the roof and the top thereof would be twenty feet six inches above said front wall or cornice. It is proposed to erect said sign between forty and fifty feet back from the building line on Twenty-second street and to face it northwest and substantially in the direction of the rear of the building. It is intended for the display of advertisements to be seen from points in the city northwest of said building. The defendant refused to approve the specifications, plans and application or to issue a permit for the erection of said sign, solely because of an ordinance of said city limiting the height of sky signs to nine feet above the front wall or cornice of the building on which it is to be erected. The application was then made for a peremptory writ of mandamus to compel the issuing of such permit. The motion being denied an appeal was taken to the Appellate Division where the order was not only reversed but a writ was granted commanding the defendant " to examine the plan and application filed by the relator and described in its petition with reference to the material to be used and the method of construction thereof and as to the safety thereof, and if he shall find that the said structure is to be built of proper materials and in a proper manner and that the proposed structure is safe and secure, then to approve said application and issue a permit thereon."

The consent of the owner of said real property is based upon a substantial consideration paid to her therefor and the relator has entered into a contract with an advertiser for the use of such sign, the consideration for which is also a substantial sum.

It is not open to controversy that if the relator is not

**130** People ex rel. Wineburgh Adv. Co. *v.* Murphy. [Mar.,

Opinion of the Court, per Chase, J. [Vol. 195.

allowed to erect and maintain such sign the owner of said building and the relator as her lessee is deprived of some rights in the beneficial use and free enjoyment of private property without direct compensation.

The ordinance of the city of New York to be construed on this appeal defines a sky sign and as so defined it is: "Any letter, word, model, sign, device or representation in the nature of an advertisement, announcement or direction supported or attached, wholly or in part over or above any wall, building or structure shall be deemed to be a 'sky sign.'"

The ordinance (section 144 of the Building Code of the city of New York) also provides as follows: "Sky signs shall be constructed entirely of metal, including the uprights, supports and braces for same, and shall not be at any point over nine feet above the front wall or cornice of the building or structure to which they are attached or by which they are supported.

All fences, signs, billboards and sky signs shall be erected entirely within the building line and be properly secured, supported and braced and shall be so constructed as not to be or become dangerous. Before the erection of any fence, sign, billboard or sky sign shall have been commenced a permit (for) the erection of the same shall be obtained from the Superintendent of Buildings having jurisdiction as provided in part 2, section 4 of this Code. Each application for the erection of any fence, sign, billboard or sky sign shall be accompanied by a written consent of the owner or owners or the lessee or lessees of the property upon which it is to be erected."

It is not the erection over and above any wall, building or structure that is prohibited, but the thing constructed plus the letter, word, model, sign, device or representation in the nature of an advertisement, announcement or direction painted or pasted thereon or attached thereto.

So far as appears there is no absolute limitation upon the height that tanks, towers or chimneys can be erected, nor as to flagpoles, balustrades, finials or other structures orna-

mental or useful. If it appeared in the relator's application that the structure proposed to be erected was not for the purpose of advertising, but for any other purpose, fancy or whim, it would not come within the prohibitive clause of the ordinance. A further examination of the ordinance shows that it relates wholly to erections within the building line and upon private property. It is in no way affected by the rules of law relating to street or municipal property. As private property the owner of the building on which it is proposed to erect the structure can use it in any way that to her may seem desirable, except as such use is subject to the implied obligation resting upon every owner of property to use it so as not to interfere with the rights of others, and also subject to such restrictions as are necessary for the public welfare.

The police power, so difficult to define, but so frequently invoked, is confined to such reasonable restrictions and prohibitions as are necessary to guard public health, morals and safety, and to conserve public peace, order and the general welfare. Regulations and ordinances within such general definition are valid. The city may make and enforce such regulations and ordinances, although they interfere with and restrict the use of private property. Compensation for such interference with and restriction in the use of property is found in the share that the owner enjoys in the common benefit secured to all.

Does the ordinance, so far as it relates to sky signs, come within the police power, or is its purpose simply to prevent or restrict a lawful business which it is alleged has been extended until it has become offensive to good taste?

It is not asserted by the city that a sky sign, as defined in the ordinance or as proposed by the relator, has any relation whatever to or effect upon public health or public morals. The only alleged reason for the passage and enforcement of the ordinance is that a structure upon which advertisements are to be placed constitutes a danger by reason of the possibility of its falling into a public street. The danger, so far as it interferes with firemen in passing over the roof of a

building, is apparently avoided in the case now before us by the provision that the structure on which the sign is to be erected will have a clear space of five feet and six inches between the roof and the bottom of the proposed structure. A structure nine feet in height would seem to be as great an interference with firemen in passing over the roof as one erected at a greater height.

An ordinance drawn to protect the public from physical danger should in terms bear some evidence of such purpose. So far as the ordinance in question relates to sky signs, it is general in its terms and it is as prohibitive in remote parts of the city as in the congested parts thereof, and to a structure erected at a safe distance from any street or public place as one erected upon the front wall or cornice of a building situated upon the building line of a public way. The prohibited height is also based upon an arbitrary measurement above the front wall or cornice of the building, notwithstanding the height of the building at the place where it is proposed to erect the structure may be much less or more than at such front wall or cornice of the building. The prohibition is, therefore, not dependent upon the dangerous location of the structure nor is it based upon the height or safety of the particular thing constructed.

But the more serious objection to the ordinance is in the fact that the absolute prohibition is confined wholly to sky signs as they are defined therein. The physical danger to the public does not arise from the advertisements. The advertisement, announcement or direction bears no relation to the safety of the structure itself. It is not the structure, therefore, that is prohibited. Would a structure of any description be more dangerous if it bore the words "Omega Oil?" Could a city enact and enforce an ordinance limiting the height of all buildings therein which are painted a particular color and leave unrestricted the height to which a building could be erected so long as it was unpainted or painted a color other than the particular one specified? Such an ordinance would bear evidence in itself that it was not enacted for any purpose within the police power. It appears from the ordinance in

question that it was not enacted in the interest of public health, morals or safety or to conserve public peace, order and general welfare, and the ordinance so far as it relates to sky signs is arbitrary and unauthorized.

This court in *City of Rochester* v. *West* (164 N. Y. 510) sustained an ordinance forbidding the erection of billboards more than six feet in height *without the consent of the common council.* The court, referring to the charter of the city, say: "We think this statute conferred upon the common council of the city authority to regulate boards erected for the purpose of bill posting, so far, at least, as such regulation was necessary to the safety or welfare of the inhabitants of the city, or persons passing along its streets. * * * It is obvious that its purpose was to allow the common council to provide for the welfare and safety of the community in the municipality to which it applied. If the defendant's authority to erect billboards was wholly unlimited as to height and dimensions, they might readily become a constant and continuing danger to the lives and persons of those who should pass along the street in proximity to them." (P. 513.)

In *Commonwealth* v. *Boston Advertising Company* (188 Mass. 348) the court held invalid an ordinance or regulation relating to signs, posters or advertisements, and say: "The plain and intended purpose of the rule is to prohibit the use of land near public parks and parkways for advertising. * * * Rules intended to prohibit advertisements of indecent or immoral tendencies, or signs dangerous to the physical safety of the public, no doubt would be reasonable within the meaning of the statute and valid. We think the case of *Rochester* v. *West* (164 N. Y. 510) was decided and can rest only on this ground."

We quote from the head note in *Bryan* v. *City of Chester* (212 Penn. St. 259) which fairly states the holding of the court as stated in the opinion as follows: "A municipality has no power to enact an ordinance forbidding citizens to erect billboards on their own property merely because such boards are unsightly or may create a nuisance. Any citizen against

whom such an ordinance is sought to be enforced is entitled to the protection of a court of equity.  Under the police powers of a municipality it may prohibit the erection of insecure billboards within its limits, prevent the exhibition from secure ones of immoral or indecent advertisements or pictures, and protect the community from any actual nuisance resulting from the use of them, but it can go no further.  All statutory restrictions of the use of property are imposed upon the theory that they are necessary for the safety, health, or comfort of the public, but a limitation without reason or necessity cannot be enforced."

In *Crawford* v. *City of Topeka* (51 Kan. 756) the court, construing an ordinance that provided that no billboard or structure for advertising purposes should be erected unless at a certain distance from the line of the street, say : " The unreasonableness of the ordinance in question is easily seen when it is considered that the mere posting of a harmless paper upon a structure changes it from a lawful to an unlawful one.  A person may erect a fence around his lot without violating the ordinance ; but just as soon as an advertisement is posted or painted thereon it is brought within the condemnation of the ordinance, and the owner is liable to prosecution and punishment."

In *Bill Posting Sign Company* v. *Atlantic City* (71 N. J. Law, 72) the court held that an ordinance forbidding the erection of signs upon private property in Atlantic City without regard to whether such signs may be dangerous to public safety is invalid, and in the opinion the court say : " The recognition of a power so wide would bestow upon the lawmaker the right to invest cities with authority to control the size and style of buildings which should be erected upon private property where the public safety was in no wise involved."

In *City of Passaic* v. *Patterson Bill Posting Advertising & Sign Painting Company* (72 N. J. Law, 285) the court, referring to an ordinance, say : " The very fact that this ordinance is directed against signs and billboards only, and not against fences, indicates that some consideration other than the public safety led to its passage.  It is obvious from the

1909.] People ex rel. Wineburgh Adv. Co. *v.* Murphy. 135

N. Y. Rep.]        Opinion of the Court, per Chase, J.

face of the ordinance that the object of the first section was not to secure the public safety; that section contains no reference to a dangerous condition of billboards, while the second section expressly undertakes to deal with those that become dangerous. * * * Æsthetic considerations are a matter of luxury and indulgence rather than of necessity, and it is necessity alone which justifies the exercise of the police power to take private property without compensation."

In *City of Chicago* v. *Gunning System* (214 Ill. 628) the court, in condemning an ordinance prohibiting certain billboards, say: "The purpose * * * seems to be mainly sentimental, and to prevent sights which may be offensive to the æsthetic sensibilities of certain individuals residing in or passing through the vicinity of the billboards."

A municipality, in enacting ordinances relating to the safety of the public, may undoubtedly make reasonable classifications among structures with reference to their location and the necessity or importance thereof without offending against the provisions of the fourteenth amendment of the Federal Constitution. The classification, as well as the ordinance itself, must be based upon some necessity justifying the exercise of the police power. It has been said that the police power of a municipality is allied to the right of self-preservation in an individual. In exercising such power or right, the purpose thereof, and the limitations thereon, should not be forgotten. The classification of the sky sign by the ordinance in question is dependent upon the letter, word, model, sign, device or representation in the nature of an advertisement, announcement or direction and it has no direct relation to the safety of the public. An ordinance which purports to legislate for public safety must tend in some appreciable way to that end. Unless there is a substantial connection between the assumed purpose of the ordinance and the end to be accomplished, such ordinance is unenforceable. (*Matter of Jacobs*, 98 N. Y. 98; *People* v. *Orange Co. Road Cons. Co.*, 175 N. Y. 84; *People* v. *Gillson*, 109 N. Y. 389; *Health Department* v. *Rector, etc.*, 145 N. Y.

32; *People* v. *Ewer*, 141 N. Y. 129; *Fisher Co.* v. *Woods*, 187 N. Y. 90.)

We think that the order of the Appellate Division was right, and that it should be affirmed, with costs.

HAIGHT, J.   I concur for affirmance.

The ordinances of the city of New York pertaining to the height and manner of construction of fences, signs or billboards, whether upon the ground or housetops, are for the protection of the public from injury, and consequently, if reasonable, are valid under the police powers which the legislature has delegated to the board of aldermen.  The only difficulty I find with reference to the ordinance pertaining to sky signs is with regard to the definition given thereof in the ordinance.  It is that "any letter, word, model, sign, device or representation in the nature of an advertisement, announcement or direction supported or attached, wholly or in part over or above any wall, building or structure, shall be deemed a sky sign."   If, therefore, the letter, word, model, sign or device is attached to any lawful structure upon the top of a building it would become a sky sign, and if over nine feet above the front wall or cornice of the building would come within the condemnation of the ordinance.  It is not the letter, word, model, sign or device that endangers the public safety, but it is the structure upon which such letter, word, model, sign or device is attached that may be dangerous.  It would, therefore, be entirely proper and within the police powers of the municipality, through its board of aldermen, to enact an ordinance limiting the construction of fences, signs or billboards, either upon the ground or the housetops to those that are safe and and to also designate the material and manner in which they shall be constructed and to limit the size or height thereof within reasonable bounds.

CULLEN, Ch. J., VANN, WERNER and HISCOCK, JJ., concur with CHASE, J.; HAIGHT, J., concurs in result, in memorandum, with whom WILLARD BARTLETT, J., concurs.

Order affirmed.