THE PEOPLE *ex rel.* Julius P. Friend, Defendant in Error, *vs.* THE CITY OF CHICAGO *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1913.*

1. MUNICIPAL CORPORATIONS—*powers of a city organized under the general law.* A city organized under the general Cities and Villages act has such powers, only, as are therein delegated or necessarily implied.

2. SAME—*statutes granting powers to municipal corporations are strictly construed.* Statutes granting powers to municipal corporations are strictly construed, and any fair and reasonable doubt as to the existence of such powers must be resolved against the municipality.

3. SAME—*enumeration of kinds of business a city may control excludes others.* The express enumeration in the Cities and Villages act of the occupations or businesses, not nuisances *per se,* over which a city is given control is an exclusion of all other occupations or businesses.

4. SAME—*clause 66 of paragraph 62 of Cities and Villages act does not give cities unrestrained police power.* Clause 66 of paragraph 62 of the Cities and Villages act, giving cities the power to pass and enforce all necessary police ordinances, is not an unrestrained and unlimited grant of police power to cities, although, as to the subjects over which cities have been given control, they may pass all necessary police ordinances.

5. SAME—*what cannot be done under guise of exercise of police power.* Even if a city were possessed of the entire police power of the State within the limits of the city it would have no power to deprive a citizen of valuable property rights under the guise of regulating or prohibiting a business or occupation that has no tendency to injure the public health or public morals or interfere with the general welfare.

6. SAME—*rights of individual as against the State.* The owner of property has the constitutional right to make any use of it he desires so long as he does not endanger or threaten the safety, health, comfort or general welfare of the public; and this right cannot be taken away or limited by the State except in so far as it may become necessary for individual rights to yield to the higher law of the best interests of the public.

7. SAME—*property rights cannot be interfered with for purely æsthetic reasons.* Legislation, either State or municipal, which interferes with private property rights or personal liberty for purely æsthetic purposes cannot be sustained.

8. SAME—*when ordinance to regulate location and construction of store buildings for retail trade is invalid.* An ordinance which prohibits the location or construction of any store for the sale, at retail, of goods, wares and merchandise in any block used exclusively for residence purposes without the frontage consent of a majority of the property owners upon both sides of the street in such block, cannot be sustained as a proper exercise of the police power by the city nor as an authorized regulation by the city of any business or occupation.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

WILLIAM H. SEXTON, Corporation Counsel, (LEON HORNSTEIN, and LORING R. HOOVER, of counsel,) for plaintiffs in error.

LEO KORETZ, and SAMUEL J. RICHMAN, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The city of Chicago has sued out this writ of error to obtain a review of the judgment overruling its demurrer to a petition for *mandamus* and awarding a writ compelling the building commissioner of said city to issue to the relator a permit for the construction of a two-story and basement brick building, containing stores on the ground floor and flats and offices on the second floor, on premises belonging to the relator located at the south-east corner of Greenwood avenue and Fifty-first street. The petition alleges the compliance with all the requirements of the city ordinances in relation to buildings of this class except section 712½ of the city ordinances, which, the petition alleges, is invalid. The section referred to is as follows:

"712½. *Frontage consents—Retail store.*—It shall be unlawful for any person, firm or corporation to locate, build or construct any store for the sale, at retail, of goods, wares and merchandise on any street, in any block in which

all the buildings are used exclusively for residence purposes, without first securing and filing with the commissioner of buildings the written consent of a majority of the property owners, according to frontage, on both sides of the street in the block in which the building to be thus used is located: *Provided,* in determining whether all the buildings in said block are used exclusively for residence purposes any building fronting upon another street and located upon a corner lot shall not be considered."

The case comes direct to this court by virtue of a certificate of the trial judge certifying that the validity of a municipal ordinance is involved.

Plaintiffs in error make some criticisms on the sufficiency of the petition in addition to the omission to aver compliance with the requirements of section 712½, but these points we do not regard as of sufficient importance to require discussion. The important question presented is whether the ordinance above quoted is valid.

It will be noted that the ordinance in question makes it unlawful to locate, build or construct any store for the sale, at retail, of goods, wares and merchandise in any block used exclusively for residence purposes without the frontage consent of a majority of the property owners on both sides of the street in the block in which the building is to be located. The ordinance does not, in terms, purport to prohibit the establishment of a retail store in such residence block, but is directed against the location and construction of a building in which such business may be carried on. It will also appear from an inspection of this ordinance that there is no attempt to classify retail store buildings, but their location and construction are indiscriminately forbidden except upon the frontage consent as provided in the said ordinance.

The city of Chicago is organized under the Cities and Villages act, and it has, therefore, only such powers as are therein delegated or necessarily implied. (*City of Chi-*

*cago* v. *Netcher,* 183 Ill. 104; *City of Earlville* v. *Radley,* 237 id. 242.) It is a rule established by many authorities that statutes granting powers to municipal corporations are strictly construed, and any fair and reasonable doubt as to the existence of the power must be resolved against the municipality. (*City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264; *City of Chicago* v. *Ross,* 257 id. 76.) Power to regulate and control the location of certain enumerated occupations is conferred upon cities and villages by various clauses of paragraph 62 of the Cities and Villages act. The clauses which relate to these subjects are as follows:

"*Fifty*—To regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables, and all other provisions, and to provide for place and manner of selling the same."

"*Eighty-one*—To direct the location and regulate the management and construction of packing houses, renderies, tallow chandleries, bone factories, soap factories and tanneries, within the limits of the city or village, and within the distance of one mile without the city or village limits."

"*Eighty-two*—To direct the location and regulate the use and construction of breweries, distilleries, livery, boarding or sale stables, blacksmith shops, foundries, machine shops, garages, laundries, and bathing beaches, within the limits of the city or village."

"*Eighty-four*—To compel the owner of any grocery, cellar, soap or tallow chandlery, tannery, stable, pig-sty, privy, sewer or other unwholesome or nauseous house or place, to cleanse, abate or remove the same, and to regulate the location thereof."

"*Ninety-three*—To regulate and prohibit the keeping of any lumber or coal yard, and the placing or piling or selling any lumber, timber, wood, coal or other combustible material, within the fire limits of the city."

A careful reading of the foregoing clauses will show that all of the subjects which are there enumerated are of a character that either are necessarily detrimental to the

comfort and well being of persons who are required to re-
side near them or may become so when improperly and
carelessly carried on.    Retail stores, other than groceries
and meat markets, are not included in the occupations
enumerated in the statute.    The city has no power to de-
clare all retail stores nuisances *per se* when it is within the
common knowledge of all persons they are not so in fact.
(*North Chicago City Railway Co.* v. *Town of Lake View,*
105 Ill. 207; *Village of DesPlaines* v. *Poyer,* 123 id. 348;
*People* v. *Busse,* 240 id. 338.)    The power to regulate the
location of retail stores has not been expressly delegated to
municipalities.    The express enumeration of certain occu-
pations or businesses in the statute over which the munici-
palities are given control is by a well known canon of con-
struction an exclusion of all other occupations.    *City of
Cairo* v. *Bross,* 101 Ill. 475; *City of Chicago* v. *M. & M.
Hotel Co. supra,* and cases there cited.

Plaintiffs in error seek to sustain the ordinance in ques-
tion under clause 66 of paragraph 62 of the Cities and
Villages act, which gives cities the power to regulate the
police and pass and enforce all necessary police ordinances.
This clause of the statute has frequently been before this
court for construction and the scope of the powers which
are thereby granted has been pointed out.    It was not the
intention of the legislature to confer unrestrained and un-
limited police power upon municipalities.    There are cer-
tain subjects over which the city has control, and as to
these subjects it may pass all necessary police ordinances.
(*City of Chicago* v. *M. & M. Hotel Co. supra,* and cases
there cited; *City of Chicago* v. *Kluever,* 257 Ill. 317.)    But
even if the municipality is clothed with the whole police
power of the State, it would still not have the power to de-
prive a citizen of valuable property rights under the guise of
prohibiting or regulating some business or occupation that
has no tendency whatever to injure the public health or pub-
lic morals or interfere with the general welfare.    An act

of the legislature which deprives the citizen of his liberty or property rights cannot be sustained under the police power unless the public health, comfort, safety or welfare demands such enactment, (*Ruhstrat* v. *People,* 185 Ill. 133; *Bailey* v. *People,* 190 id. 28; *Bessette* v. *People,* 193 id. 334;) and there must be some logical connection between the object to be accomplished by such legislation and the means prescribed to accomplish that end. The owner of property has the constitutional right to make any use of it he desires, so long as he does not endanger or threaten the safety, health and comfort or general welfare of the public. This right cannot be wholly taken away or limited by the State except in so far as it may become necessary for individual rights to yield to the higher and greater law of the best interest of the public. (*Haller Sign Works* v. *Training School,* 249 Ill. 436.) There is nothing inherently dangerous to the health or safety of the public in conducting a retail store. It may be that in certain exclusively residential districts the owners of residence property would prefer not to have any retail stores in such blocks, but if such be the case it manifestly arises solely from æsthetic considerations, disconnected entirely from any relation to the public health, morals, comfort or general welfare. Legislation, either by the State or by municipal corporations, which interferes with private property rights or personal liberty, cannot be sustained for purely æsthetic purposes.

We do not find it possible, under any view of the law, to sustain section 712½ of the ordinance. Defendant in error was not required to comply with its provisions in order to entitle him to a building permit.

The superior court of Cook county did not err in awarding a peremptory *mandamus.* Its judgment is affirmed.

*Judgment affirmed.*