AMBLER REALTY CO. v. VILLAGE OF EUCLID, OHIO, et al.

(District Court, N. D. Ohio, E. D. January 14, 1924.)

No. 898.

1. Injunction ⬅️85(2)—Court may enjoin enforcement of void municipal ordinance.

A court of equity has jurisdiction to enjoin enforcement of a municipal ordinance which is void but which, while in force, constitutes a substantial cloud on the title to property and depreciates its market value.

2. Constitutional law ⬅️278(1)—Zoning ordinance held invalid as depriving owners of property without due process of law.

A village zoning ordinance restricting the class of buildings which may be built within certain distances from designated streets, and which as affecting complainant's property, consisting of a considerable tract of unimproved land, would prevent the sale and use of a large part of it for legitimate purposes, to which it would normally, because of its location, be devoted, with consequent substantial depreciation of its market value, held void as depriving complainant of its property without due process of law, in violation of the Fourteenth Amendment, as well as in violation of provisions of the state constitution of Ohio.

3. Eminent domain ⬅️2(1)—"Property" is protected from confiscatory exercise of police power.

Property is more than the mere thing which a person owns, and includes the right to acquire, use, and dispose of it, and the Constitution

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

protects an owner, not only against a taking without compensation under the power of eminent domain, but also against an exercise of the police power which, while, leaving him title and possession, deprives him of the normal and legitimate use of his property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, ·Property.]

4. Eminent domain ⬤⟹2(1)—Ordinance held not sustainable on theory of average reciprocity of advantages.

An ordinance which deprives an owner of the right to make normal and legitimate use of his property cannot be sustained on the theory that he would be compensated indirectly by benefits accruing from the effect of the same restrictions on other property, especially where the facts and probabilities do not support such theory.

In Equity. Suit by the Ambler Realty Company against the Village of Euclid, Ohio, and Harry W. Stein, Inspector of Buildings. Decree for complainant.

Baker, Hostetler & Sidlo, of Cleveland, Ohio (N. D. Baker, of Cleveland, Ohio, of counsel), for plaintiff.

James Metzenbaum and W. C. Boyle, both of Cleveland, Ohio, and Alfred Bettman, of Cincinnati, Ohio, for defendants. ·

WESTENHAVER, District Judge. This suit is brought to have declared null and void and enforcement enjoined of Ordinance No. 2812, enacted by the municipal council of the village of Euclid, November 13, 1922, and amended by Ordinances Nos. 3367 and 3368, enacted June 11, 1923. This ordinance is what is popularly called a "zoning ordinance," i. e., one imposing a variety of restrictions upon the use of land within the village limits. After issue joined, the evidence was taken and submitted in deposition form.

This case is obviously destined to go higher. On appeal in equity cases, a reviewing court weighs the evidence, and when taken in deposition form it can do so as well as the trial court; hence it is unnecessary to make special findings of fact. Much of the evidence is immaterial; still more of it is without weight. Upon the facts the case really comes down to the provisions of the ordinance, certain physical facts characterizing the situation as it affects plaintiff's land, and the nature and extent of the impairment of its value by the ordinance restrictions. None of the important or controlling facts are in dispute, with the single exception of the extent of that damage; but even here there is no substantial denial that this damage is not only in excess of the jurisdictional amount but is substantial. As an instance of immaterial testimony may be noted the large volume relating to the inadequacy of the present water supply of the village of Euclid. Manifestly, the police power of the village to legislate in the interests of the public health or public safety cannot be enlarged by its failure or refusal to perform its fundamental duty of providing an adequate water supply. Upon the whole case, it is sufficient to say that the material and substantial allegations of plaintiff's bill are sufficiently proved.

The village of Euclid is a suburb of the city of Cleveland and a part of its great metropolitan and industrial area. It comprises ap-

proximately 16 square miles. If fully built up as a city, it will accommodate a population of several hundred thousand, but its present population is only a few thousand. It is traversed from east to west by the New York Central and Nickel Plate Railways, both being through interstate trunk lines. It is likewise traversed from east to west by three main thoroughfares: the Lake Shore Boulevard, near to its northerly boundary, parallel with the south shore of Lake Erie; St. Clair avenue, through its center; and Euclid avenue near its southern side. Plaintiff owns a tract of 68 acres of unimproved and unallotted land lying a short distance east of the easterly limits of the city of Cleveland. This tract is bounded on the north by the Nickel Plate Railway, and on the south by Euclid avenue. Industry and population have followed these railways and street highways eastwardly, and manufacturing plants have already been established within the village and beyond its limits along the line of the railways, and to a lesser extent along the line of St. Clair and Euclid avenues. From the Public Square in Cleveland throughout its entire length, including spots in and beyond Euclid village, Euclid avenue has become the great business and commercial street of the metropolitan area of Cleveland, and such, the evidence shows, is its natural, obvious, and ultimate use within and beyond the village of Euclid. Plaintiff's tract is rectangular in form, having a frontage on Euclid avenue and the Nickel Plate Railway of approximately 1,800 feet, and a depth of approximately 1,950 feet. Ordinance 2812, with its amendments, restricts the present and future use of this land. The frontage on Euclid avenue to a depth of 150 feet may be used only for a single-family dwelling. The next 470 feet in the rear thereof may be used only for two-family dwellings. The next 130 feet farther to the rear may be used only for apartment dwellings and not for any form of trade or industry. The remaining 1,200 feet north to the Nickel Plate Railway may be used for industrial and manufacturing purposes. Many additional restrictions are imposed as to the height of any and all kinds of buildings, as to the lot area which may be built on and which must be left free, and as to the set-back distances from street and lot lines. All industrial, manufacturing, trade, and commercial uses or occupations, including wholesale and retail stores, are forbidden upon the part of plaintiff's land restricted for single or double family dwellings and apartment houses. The entire area of the village, comprising nearly 16 square miles, and now largely farm land, is restricted in like manner to six different classes of uses. In the restrictive scheme, however, no provision is made, and none seems to be contemplated, for the opening of necessary highways or the preservation of land for that purpose. The evidence clearly shows that the normal and reasonably to be expected use and development of plaintiff's land along Euclid avenue is for general trade and commercial purposes, particularly retail stores and like mercantile establishments; and that the normal and reasonably to be expected use of the residue, including the restricted area, is for industrial and trade purposes. The evidence also clearly shows that the restrictive provisions of the ordinance in question impair the salability of this land and depress its present market value to the extent of several hundred thousand dollars. These restrictions, if sustained, the evidence further

shows, will prevent the normal and reasonably to be expected increased value due to the availability of this land for trade, industrial, and commercial purposes.

[1] 1. No doubt exists upon the foregoing facts as to the jurisdiction of a court of equity to grant relief if the ordinance is in fact void. It was enacted under color of authority and is apparently valid. While it is outstanding, it creates a substantial cloud upon plaintiff's title, and the only adequate relief is a decree ascertaining and declaring its invalidity and canceling the cloud. See Kennington v. Palmer, 255 U. S. 100, 41 Sup. Ct. 303, 65 L. Ed. 528; United States v. Swartz, 255 U. S. 102, 41 Sup. Ct. 304, 65 L. Ed. 531; Willard v. Palmer, 255 U. S. 106, 41 Sup. Ct. 305, 65 L. Ed. 534; Adams v. Tanner, 244 U. S. 590, 37 Sup. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Block v. Hirsh, 256 U. S. 135, 41 Sup. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165; Brown Holding Co. v. Feldman, 256 U. S. 170, 41 Sup. Ct. 465, 65 L. Ed. 877; Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

[2] 2. Nor, in my opinion, can it be doubted that the ordinance is void because its provisions are in violation of article 1, § 1, Constitution of Ohio, which provides, "All men * * * have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property," and of article 1, § 19, which provides, "Private property shall ever be held inviolate," and that, "Where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury," and also of section 1 of the Fourteenth Amendment to the Constitution of the United States, which provides, "Nor shall any state deprive any person of life, liberty, or property, without due process of law." In reaching this conclusion, I assume that the village of Euclid, by virtue of article 18, § 3, of the Constitution of Ohio, and section 4366—7 to 4366—12, inclusive, General Code of Ohio, possesses all the police power sought to be exercised which the Ohio Legislature might properly confer upon a municipality.

3. The constitutional validity of an ordinance of this nature under the Ohio Constitution has not been expressly passed on by the state Supreme Court. Euclid-Doan Co. v. Cunningham, 97 Ohio St. 130, 119 N. E. 361, L. R. A. 1918D, 700, involves merely building code restrictions of the kind usually enacted to prohibit fire risks and hazards and always and everywhere held to be within the state police power. Ohio Co. v. Rendigs, 98 Ohio St. 257, 120 N. E. 836, involves merely the power to prohibit the maintenance in a residence district of a business which upon the facts as well as by common experience either is or may become a nuisance, and exercises only the well-known power to abate existing nuisances or to prevent the creation of nuisances in the future. In Pontiac Co. v. Commissioners, 104 Ohio St. 447, 135 N. E. 635, 23 A. L. R. 866, it was said that the imposition of restrictions by the exercise even of the power of eminent domain upon property contiguous to a public park, some of which restrictions

were akin to those now in question, would be a taking of property not for public use, and would violate the provisions protecting the right of property, already cited, of the Ohio Constitution. However, these statements of the law in the opinion are not incorporated in the syllabi, and inasmuch as the syllabi are, by rule of court, to be prepared and approved as embodying the law of the case, and inasmuch as the decision of this question was not indispensable in disposing of the case, these statements may be regarded as dicta, no matter how well considered and deliberately made they appear to have been. The decisions of the subordinate courts are in conflict. See Lucas v. State ex rel. Abt, a decision of the Court of Appeals of the Fifth District, 21 Ohio Law Reporter, 363 (December 31, 1923), holding such an ordinance invalid, and State ex rel. Morris v. East Cleveland, 22 Ohio N. P. (N. S.) 549, holding such an ordinance valid. Other conflicting unreported decisions have been made.

4. It cannot be said that the Supreme Court of the United States has decided definitely or finally the exact questions here involved. The problem, therefore, is to determine in the light of the principles of law announced and the decisions made upon analogous facts, just what will be the ultimate decision of that court when a case like this goes to it.

The rent law cases, Block v. Hirsh, 256 U. S. 135, 41 Sup. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165, sustaining the District of Columbia rent law, and Brown Holding Co. v. Feldman, 256 U. S. 170, 41 Sup. Ct. 465, 65 L. Ed. 877, and Levy Leasing Co. v. Siegel, 258 U. S. 242, 42 Sup. Ct. 289, 66 L. Ed. 595, sustaining the New York City rent law, seem to be the high-water mark of state police power. Those laws were sustained, however, only as a temporary expedient to meet a great emergency due to the disastrous effects of a world war. In passing, it is well to note that both of these emergency laws, limited when enacted to expire in two years, have been extended for an additional term of two years, and that it is now proposed to extend them for two years more, thus emphasizing the warning of Mr. Justice Bradley (Boyd v. U. S., 116 U. S. 635, 6 Sup. Ct. 524, 29 L. Ed. 746) to withstand at the very beginning every invasion of a constitutional guaranty of life, liberty, or property.

In the later case of Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 43 Sup. Ct. 158, 67 L. Ed. 322, Mr. Justice Holmes, who had delivered the majority opinion in the rent law cases, points out their limited application. He says:

"The late decisions upon laws dealing with the congestion of Washington and New York, caused by the war, dealt with laws intended to meet a temporary emergency and providing for compensation determined to be reasonable by an impartial board. They went to the verge of the law, but fell far short of the present act."

The present act thus referred to and held void was a Pennsylvania statute prohibiting the mining of coal so as to cause the caving-in, collapse, or subsidence of public buildings, streets, roads, or dwellings, or other structures, but excepting from its operation certain territory sparsely populated. It was held that as applied to surface land under the city of Scranton, which had been conveyed to the surface own-

ers with a reservation of a right to mine and remove the underlying coal without liability for damage, the law was unconstitutional and void and in excess of the police power, despite definite findings by the state Legislature that its passage was necessary to protect the lives and safety of the citizens of the state. In summing up the court's conclusion, Mr. Justice Holmes says:

"The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. [Cases cited.] When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States. * * * In general it is not plain that a man's misfortunes or necessities will justify his shifting the damages to his neighbor's shoulders. [Cases cited.] We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

Since have been announced the decisions in Adkins v. Children's Hospital, 261 U. S. 525, 43 Sup. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238, declaring void the minimum wage law for women, and in Wolff Co. v. Industrial Court, 262 U. S. 522, 43 Sup. Ct. 630, 67 L. Ed. 1103, declaring invalid certain provisions of the Kansas Compulsory Anti-Strike Law. The principles of law therein announced, while dealing with different facts, are pertinent to the present case because of the clearly defined limitations set to the legislative disposition to extend the police power until private property is destroyed and the guaranties of the Constitution are annihilated. In the light of these several decisions, I am of opinion that the ordinance under consideration is, and the Supreme Court would so hold, a taking of plaintiff's property without due process of law, and that, as applied to property situated as is plaintiff's, it can be sustained, if at all, only as an exercise of the power of eminent domain and on the condition of making just compensation.

Compare, also, Eubank v. City of Richmond, 226 U. S. 137, 33 Sup. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192, in which an act of the Virginia Legislature, sustained by the state Supreme Court, providing for the establishment of uniform building lines in a single city block, was held unconstitutional and void; Adams v. Tanner, 244 U. S. 590, 37 Sup. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973, in which a statute of the state of Washington, prohibiting employment agencies from taking compensation for their services, was held unconstitutional and void; Buchanan v. Warley, 245 U. S. 60, 38 Sup. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201, in which an ordinance of the city of Louisville, held by the state Supreme Court to be valid and within the legislative power delegated to the city, districting and restricting residential blocks so that the white and colored races should be segregated, was held to be a violation of the Fourteenth Amendment and void. It seems to me that no candid mind can deny that more and stronger reasons exist, having a real and substan-

tial relation to the public peace, supporting such an ordinance than can be urged under any aspect of the police power to support the present ordinance as applied to plaintiff's property. And no gift of second sight is required to foresee that if this Kentucky statute had been sustained, its provisions would have spread from city to city throughout the length and breadth of the land. And it is equally apparent that the next step in the exercise of this police power would be to apply similar restrictions for the purpose of segregating in like manner various groups of newly arrived immigrants. The blighting of property values and the congesting of population, whenever the colored or certain foreign races invade a residential section, are so well known as to be within the judicial cognizance.

[3] 5. The argument supporting this ordinance proceeds, it seems to me, both on a mistaken view of what is property and of what is police power. Property, generally speaking, defendant's counsel concede, is protected against a taking without compensation, by the guaranties of the Ohio and United States Constitutions. But their view seems to be that so long as the owner remains clothed with the legal title thereto and is not ousted from the physical possession thereof, his property is not taken, no matter to what extent his right to use it is invaded or destroyed or its present or prospective value is depreciated. This is an erroneous view. The right to property, as used in the Constitution, has no such limited meaning. As has often been said is substance by the Supreme Court: "There can be no conception of property aside from its control and use, and upon its use depends its value." See Cleveland, etc., Ry. Co. v. Backus, 154 U. S. 439, 445, 14 Sup. Ct. 1122, 38 L. Ed. 1041; Branson v. Bush, 251 U. S. 182, 40 Sup. Ct. 113, 64 L. Ed. 215; Block v. Hirsh, 256 U. S. 165, 41 Sup. Ct. 458; Pennsylvania Coal Co. v. Mahon, 260 U. S. 414, 43 Sup. Ct. 158, 67 L. Ed. 322; Buchanan v. Warley, 245 U. S. 74, 38 Sup. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201. In the case last cited, Mr. Justice Day says:

"Property is more than the mere thing which a person owns. It is elementary that it includes the right to acquire, use, and dispose of it. The Constitution protects these essential attributes of property. [Cases cited.] Property consists of the free use, enjoyment, and disposal of a person's acquisitions without control or diminution save by the law of the land."

A similar misconception or confusion of thought appears to exist touching the nature and extent of the police power. In one brief it is said:

"As is well known, the police power is the whole reserved power of the community to legislate concerning persons and things in the interests of the promotion of the public health, the public morals, the public safety, the public convenience, the public order, the public prosperity, and the general welfare."

It is from this broad generalization that counsel deduce the conclusion that since the ordinance in question does not take away plaintiff's title or oust it from physical possession, the power of eminent domain has not been exercised, but that the police power has been. This conception recognizes no distinction between police power and sovereign power. The power asserted is not merely sovereign, but is power un-

shackled by any constitutional limitation protecting life, liberty, and property from its despotic exercise. In defendants' view, the only difference between the police power and eminent domain is that the taking under the former may be done without compensation and under the latter a taking must be paid for. It seems to be the further view that whether one power or the other is exercised depends wholly on what the legislative department may see fit to recite on that subject. Such, however, is not the law. If police power meant what is claimed, all private property is now held subject to temporary and passing phases of public opinion, dominant for a day, in legislative or municipal assemblies.

Expressions, I do not doubt, supporting each phase of counsel's definition of police power can be found in opinions of the courts. Certain United States Supreme Court cases are cited and general language used therein is quoted. However, as was well said in Byrne v. Maryland Realty Co., 129 Md. 202, 98 Atl. 547, L. R. A. 1917A, at page 1218:

"They rely upon certain general language of the court in those cases which, if disconnected with the context and read apart from the facts of the cases, would confer upon the legislature almost unlimited power, and would authorize it in the name of the police power to overturn the foundations of constitutional government. But when the language of the court is read in the light of the fact with which it was dealing, it is clear that the court did not intend to lay down any new doctrine of the police power."

Language of Mr. Justice Holmes in Noble State Bank v. Haskell, 219 U. S. 111, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, is specially stressed. His later explanation of this language on rehearing (219 U. S. 580, 31 Sup. Ct. 299, 55 L. Ed. 341) is overlooked. After saying that a wrong impression seems to have been conveyed as to some details by the language used in the original opinion, and that the cases had not been cited to establish that property might be taken for private use, he adds:

"The analysis of the police power, whether correct or not, was intended to indicate an interpretation of what has taken place in the past not to give a new or wider scope to the power."

Obviously, police power is not susceptible of exact definition. It would be difficult, even if it were not unwise, to attempt a more exact definition than has been given. And yet there is a wide difference between the power of eminent domain and the police power; and it is not true that the public welfare is a justification for the taking of private property for the general good. The broad language found in the books must be considered always in view of the facts, and when this is done, the difficulty disappears. A law or ordinance passed under the guise of the police power which invades private property as above defined can be sustained only when it has a real and substantial relation to the maintenance and preservation of the public peace, public order, public morals, or public safety. The courts never hesitate to look through the false pretense to the substance. As instances in which false pretenses of exercising police power in the interests of public health, safety, morals, and welfare, were disregarded, attention is called to Pennsylvania Coal Co. v. Mahon, supra, and Adkins v.

Children's Hospital, supra. In the last case, a wider acquiescence in the assumed police power was shown than can be asserted in behalf of the power here involved.

The remaining United States Supreme Court cases cited by defendant call for little comment. Welch v. Swasey, 214 U. S. 91, 29 Sup. Ct. 567, 53 L. Ed. 923, involved merely a reasonable regulation of the height of buildings. Sligh v. Kirkwood, 237 U. S. 52, 35 Sup. Ct. 501, 59 L. Ed. 835, involved merely the shipment in interstate commerce of unwholesome and unripe citrus fruits not fit for human consumption. Reinman v. Little Rock, 237 U. S. 171, 35 Sup. Ct. 511, 59 L. Ed. 900, involved an ordinance prohibiting the maintenance of a livery stable in a residence district, a kind of occupation long and well recognized as likely to become, if not already, a public nuisance. Hadacheck v. Sebastian, 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927, involved the operation of a brick manufacturing plant in a purely residential district, and also falls within the nuisance classification, although somewhat extreme upon the facts. Cusack v. Chicago, 242 U. S. 526, 37 Sup. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594, and St. Louis Poster Advertising Co. v. St. Louis, 249 U. S. 270, 39 Sup. Ct. 274, 63 L. Ed. 599, involved ordinances regulating the manner of constructing and maintaining billboards. The exercise of police power in all of these cases was sustained because of its intimate relation to the prevention of nuisances. All of them also affirm decisions of state courts of last resort, and much weight is accorded in nuisance cases to the judgment of the judges on the spot and steeped in local tradition. And as to the most extreme of the cases, the Chicago and St. Louis billboard ordinances, it should be further noted that the respective supreme courts of Illinois and Missouri, which sustained them, are two of the courts which have uniformly and inflexibly stricken down zoning ordinances restricting the normal and legitimate use of private property. See People ex rel. Friend v. Chicago, 261 Ill. 16, 103 N. E. 609, 49 L. R. A. (N. S.) 438, Ann. Cas. 1915A, 292; City of St. Louis v. Dorr, 145 Mo. 466, 41 S. W. 1094, 46 S. W. 976, 42 L. R. A. 686, 68 Am. St. Rep. 575; State ex rel. Penrose Investment Co. v. McKelvey (Mo. Sup.) 256 S. W. 474, decided October 6, 1923.

[4] 6. Nor can the ordinances here be sustained by invoking the average reciprocity of advantage rule. Instances in which this principle was invoked to sustain exercises of the police power are Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 34 Sup. Ct. 359, 58 L. Ed. 713, holding valid a statute requiring owners of adjoining coal veins to leave supporting boundary line pillars, and Jackman v. Rosenbaum Co., 260 U. S. 22, 43 Sup. Ct. 9, 67 L. Ed. 107, holding valid the party wall law of Pennsylvania. It is a futile suggestion that plaintiff's present and obvious loss from being deprived of the normal and legitimate use of its property would be compensated indirectly by benefits accruing to that land from the restrictions imposed by the ordinance on other land. It is equally futile to suppose that other property in the village will reap the benefit of the damage to plaintiff's property and that of others similarly situated. The only reasonable probability is that the property values taken from plaintiff and other

owners similarly situated will simply disappear, or at best be trans-ferred to other unrestricted sections of the Cleveland industrial area, or at the worst, to some other ,and far distant industrial area. So far as plaintiff is concerned, it is a pure loss. In the average reciprocity of advantage there is a measureless difference between adjoining property owners as regards a party wall or a boundary pillar, and the owners of property restricted as in this case. In the former there may be some reciprocity of advantage, even though unequal in individual cases. In the present case, the property values are either dissipated or transferred to unknown and more or less distant owners.

The plain truth is that the true object of the ordinance in question is to place all the property in an undeveloped area of 16 square miles in a strait-jacket. The purpose to be accomplished is really to regulate the mode of living of persons who may hereafter inhabit it. In the last analysis, the result to be accomplished is to classify the population and segregate them according to their income or situation in life. The true reason why some persons live in a mansion and others in a shack, why some live in a single-family dwelling and others in a double-family dwelling, why some live in a two-family dwelling and others in an apartment, or why some live in a well-kept apartment and others in a tenement, is primarily economic. It is a matter of income and wealth, plus the labor and difficulty of procuring adequate domestic service. Aside from contributing to these results and furthering such class tendencies, the ordinance has also an esthetic purpose; that is to say, to make this village develop into a city along lines now conceived by the village council to be attractive and beautiful. The assertion that this ordinance may tend to prevent congestion, and thereby contribute to the health and safety, would be more substantial if provision had been or could be made for adequate east and west and north and south street highways. Whether these purposes and objects would justify the taking of plaintiff's property as and for a public use need not be considered. It is sufficient to say that, in our opinion, and as applied to plaintiff's property, it may not be done without compensation under the guise of exercising the police power.

7. Many state cases are cited, most of them of inferior courts. It would unduly prolong this opinion to review them, and no useful purpose would be subserved by so doing. I perceive no distinction between comprehensive zoning ordinances applied to an entire city, and zoning ordinances applied to parts only of a city, provided only that the part to which the same is applied is an area sufficiently large to justify separate treatment. The principle is the same in both classes of cases. The police power cannot be enlarged or its nature changed by extending its operation over a wider area. In my opinion, the great weight of state authority, as well as sound reason, is with the cases which hold an ordinance and laws imposing restrictions such as are here involved, to be invalid, as an unreasonable taking of private property. See Spann v. Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, and cases reviewed in note; Byrne v. Maryland Realty Co., 129 Md. 202, 98 Atl. 547, L. R. A. 1917A, 1216, and cases reviewed in note page 1220; People ex rel. Friend v. Chicago, 261 Ill. 16, 103 N. E. 609, 49 L. R. A. (N. S.) 438, Ann. Cas. 1915A, 292, and cases reviewed in

note; Willison v. Cooke, 54 Colo. 320, 130 Pac. 828, 44 L. R. A. (N. S.) 1030, and note; Val Fruth v. Board of Affairs, 75 W. Va. 456, 84 S. E. 105, L. R. A. 1915C, 981, and note; Haller Sign Works v. Physical Culture Training School, 249 Ill. 436, 94 N. E. 920, 34 L. R. A. (N. S.) 998, and note; Wineburgh Advertising Co. v. Murphy, 195 N. Y. 126, 88 N. E. 17, 21 L. R. A. (N. S.) 735, and note. Attention is also called to Miller v. Board of Public Works, 2d App. Dist. Cal. decided December 21, 1923, 227 Pac. ——, because it contains an able discussion of the principles and a careful review of the authorities, and also because defendants' counsel classify California as a state holding valid comprehensive zoning ordinances.

Defendants' contention finds some support in the New York, Massachusetts, Wisconsin, Kansas, and Louisiana Cases. In New York, the validity of the statute of the state and the ordinance of New York City is assumed rather than decided. Furthermore, the law and ordinance both provide, by means of a board, for suspending or varying restrictions on application of any aggrieved property owner. The opinion in Opinion of the Justices, 234 Mass. 597, 127 N. E. 525, was given to the Legislature and is not an authority. It rests in part upon a recent amendment to the state Constitution. However, in concluding the opinion, it is said:

"It is easy to imagine ordinances enacted under the assumed authority of the proposed act which would exceed the constitutional limits of the police power and be an indefensible invasion of private rights."

In my opinion, we have that situation here. The Louisiana decision is also the result of a similar constitutional amendment. It is not correct, as urged, that State ex rel. v. Houghton, 144 Minn. 1, 174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585, overrules State v. Houghton, 134 Minn. 226, 158 N. W. 1017, L. R. A. 1917F, 1050. On the contrary, the restrictions were sustained only because imposed by virtue of the power of eminent domain, with reasonable provision for just compensation. It would seem that until quite recently the method of procedure in Massachusetts and other New England States was by exercising the power of eminent domain and making due compensation. See Windsor v. Whitney, 95 Conn. 357, 111 Atl. 354, 12 A. L. R. 669. So far as these cases conflict with the views herein expressed, I am unable to follow them.

8. My conclusion is that the ordinance involved, as applied to plaintiff's property, is unconstitutional and void; that it takes plaintiff's property, if not for private, at least for public, use, without just compensation; that it is in no just sense a reasonable or legitimate exercise of police power. This is not to say that many of the restrictions imposed throughout the village may not be valid, nor that many of them might not be established as against plaintiff's property under the police power. But, however this may be, all the provisions of the ordinance, so far as they pertain to plaintiff's property, are so intermingled and inseparable that as to its property at least, the ordinance must be declared wholly null and void. See Hill v. Wallace, 259 U. S. 44, 70, 42 Sup. Ct. 453, 66 L. Ed. 822; Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 Sup. Ct. 244, 66 L. Ed. 458.

A decree in conformity herewith will be entered.