Argued July 14, reversed November 3, rehearing denied November 17, 1925.

## ERNEST KRONER and FRANK MICHELS *v.* CITY OF PORTLAND et al.

### (240 Pac. 536.)

**Pleading—Complaints, Averring Generally That Plaintiffs Conformed to Zoning Ordinances, State Mere Conclusions.**

1. Complaints, averring in general terms that plaintiffs, suing to restrain city from interfering with erection of building on their premises, have conformed to zoning ordinances, state mere conclusions of law; good pleading requiring that they state precisely what they had done and plead ordinance.

**Municipal Corporations—Declared Purpose of Ordinance Accepted as True.**

2. Declared purpose of act or ordinance must be accepted as true, unless incompatible with its meaning and effect.

Constitutional Law—Lot Owners Held to have No Vested Use Precluding City from Prohibiting Erection of Creamery Building Thereon.

3. Purchasers of lots, occupied only by church partially destroyed by fire, had no vested use, precluding city from enacting ordinance prohibiting erection of creamery building thereon.

Injunction—Proper Remedy to Prevent Enforcement of Void Legislation.

4. Injunction is proper remedy to prevent enforcement of void legislation, though there may be some remedy at law.

Constitutional Law—Local Regulations of Use of Property for Business Purposes do not Necessarily Violate Due Process or Equal Protection Clauses.

5. Local regulations of use of property for business purposes in thickly inhabited city, pursuant to authority to enact zoning ordinances conferred by Laws of 1919, page 539, do not violate due process or equal protection clauses of Constitution of the United States Amendment 14, if they are not clearly unreasonable and arbitrary and operate uniformly on all similarly situated in particular district not arbitrarily selected.

Constitutional Law — Exercise of Police Power Matter of Legislation, With Which Courts Ordinarily cannot Interfere.

6. Exercise of police power is matter of legislation, with which courts cannot interfere, unless purely arbitrary or unconnected with, or without bearing on, legitimate objects sought to be attained.

Municipal Corporations — Cities can Regulate Use of Property for Business Purposes.

7. Governmental agencies entrusted with police power, as is City of Portland, can enact laws regulating use of property for business purposes.

Municipal Corporations—Ordinance Prohibiting Erection of Creamery Buildings in Certain Districts Valid.

8. Creamery, with its boilers, milk cans, delivery trucks, etc., is subject to different regulation from that appropriate to private dwelling, and ordinance prohibiting erection of creamery buildings in certain districts, being based on fair classification applying to all alike within entire city, and depriving property owners of no part of their interest therein, is valid whether or not reasons therefor would control Supreme Court in enacting ordinance.

Municipal Corporations—Condition of Near-by Residences and Nearness of Other Manufacturing Institutions cannot Affect Validity of Zoning Ordinance Otherwise Valid.

9. That residences in district, wherein erection of creamery building was prohibited by ordinance, were old and dilapidated, and

5. Validity of ordinance prohibiting carrying on business in residential district, see note in Ann. Cas. 1914A, 132.
6. See 6 R. C. L. 240.

other manufacturing institutions were within few blocks of proposed site of creamery, cannot affect validity of zoning ordinance within police power conferred by Laws of 1919, page 539, general in application and founded on reasonable classifications.

See (1) 31 **Cyc.** 50.    (2) 28 **Cyc.** 389.    (3) 12 **C. J.** 967 (Anno.). (4) 32 **C. J.** 264.    (5) 12 **C. J.** 1150, 1275.    (6) 12 **C. J.** 892, 893. (7) 28 **Cyc.** 738.    (8) 28 **Cyc.** 736.    (9) 28 **Cyc.** 736.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

REVERSED.

For appellants there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. H. M. Tomlinson,* Deputy City Attorney.

For respondents there was a brief and oral argument by *Mr. Thomas Mannix.*

*W. B. Shively,* for the Portland Realty Board, *Amicus Curiae.*

BURNETT, J.—Claiming to be the owners of two lots covering a space of 100 feet square at the southeast corner of East Thirteenth and Pine Streets in Portland, Oregon, the plaintiffs have brought this suit against the city and the mayor and commissioners composing the city council to restrain them from interfering with the plaintiffs in their construction of a building on the premises mentioned. In the complaint they quote three admitted sections of the city ordinance in force at the beginning of the suit whereby buildings erected, used, occupied or altered for occupancy in certain industries, including creameries employing over five persons, should be restricted to location. They avow

that they intend to construct a building to be used for such a creamery and retail store. The ordinance, as quoted, prescribes that no such building shall be erected until a permit therefor shall have been approved by the council. Another section requires that an application for such a permit shall be accompanied by· a plan giving location of the building in question together with all buildings within a radius of 200 feet from the building and giving also the names and addresses of the owners of such buildings. Provision is made for notification and hearing of protests, and it is said in the ordinance that

"The granting of the application for permit will not be approved by the Council wherever it appears that the granting of the same is or may be detrimental to public health or safety or detrimental to the welfare and growth of the city."

The complaint avers:

"That the said Plaintiffs have conformed to the said ordinance in every way with respect to the provisions thereof relating to securing permission from the City Council to construct the said building in the following manner: that is, the said Plaintiffs made application to the said Council on or about May 12th, 1924, for permission to construct a building on the said premises and such as has heretofore been described, and thereafter the said council pursuant to the said ordinances had a hearing on the said application, and thereafter notified the said Plaintiffs that the application for permission to erect and maintain a building for a proposed creamery and retail store on the above described premises and filed in the office of the said Council, had been refused and denied, and it is further averred in this connection, that the said Defendants above, do refuse and have refused to issue any permit, and have threatened and are threatening

the said Plaintiffs with legal proceedings if they start to construct the said building.''

The quoted sections of the ordinance are admitted by the answer, which otherwise traverses most of the complaint. Further answering, the defendants set up various sections of ordinances relating to the erection of buildings in the city, providing among other conditions, that an application for permit shall be accompanied by two sets of plans and specifications covering the work as required by the building code and going into particulars as to the nature of the plans and specifications. The answer also points out that by virtue of one of the sections quoted in the complaint no building of the kind proposed by the plaintiff shall be erected in a residential district and that the term ''residential district'' applies to property having at least 7 per cent of the buildings on both sides of the street on which the property fronts between the nearest intersecting streets designed for and used as single or two family residences, and as measured by that standard the place in which plaintiff proposes to erect his building is in a residence district. It is averred in the answer that the application for permit was not accompanied by any plans or specifications or other documents whatever showing the method of the construction of the proposed building. The denial of the permit is admitted. The reply denies the averments of the answer except as they admit the allegations of the plaintiff's complaint.

A supplemental answer sets up that after the filing of the complaint and answer, what may be called for convenience, a zoning ordinance, was enacted by the legal voters of the city on November 4, 1924, by the initiative process. Later on the

plaintiffs filed a supplemental complaint in which the zoning ordinance is averred and set forth by copy concerning which the supplemental complaint alleges:

"The said Plaintiffs have conformed in every respect with the Zoning ordinance and have requested of the defendants authority to construct such a building as that described in the original complaint but the same has been refused.

"The Plaintiffs say that the said zoning ordinance adopted as aforesaid is null and void and of no effect and contravenes the 14th amendment of the Federal Constitution and also section 10 and section 18 of the Constitution of the State of Oregon, in that the said provisions of the said zoning ordinance in so far as applicable, deny to the plaintiffs due process of law, and constitutes a taking of their property without compensation, and denies them the equal protection of the laws.

"That under such zoning ordinance and by the defendants, the plaintiffs are prohibited from building such a creamery building as that described in the original complaint on the premises described in the said original complaint, and further the said zoning ordinance by its own terms prohibits the erection of the proposed building mentioned in original complaint on the premises mentioned in question."

The answer to the supplemental complaint denies the allegations thereof, except the enactment of the zoning ordinance.

The Circuit Court adjudged that enactment to be void and unconstitutional and entered a decree enjoining the defendants from interfering with the plaintiffs in the erection of the proposed building, and the defendants have appealed.

1. In passing, it may be noted that in the main, the various complaints state nothing more than conclusions of law in that they aver in general terms that the plaintiffs have conformed to the ordinances. Good pleading in the matter requires that they should state with precision what they have done, pleading also the ordinance so that the court could determine as a matter of law whether the plaintiffs had indeed conformed to the city law.

The Legislative Assembly of 1919 enacted a general law entitled:

"An Act to provide for the establishment within municipalities of districts or zones within which the use of property, height of improvements and required open spaces for light and ventilation of such buildings may be regulated by ordinance, and providing that the council may establish a penalty for the violation of such ordinance." Laws 1919, Chap. 300.

A condensed *résumé* of the ordinance involved in this suit is here set down. It is entitled:

"An Ordinance dividing the City of Portland into four districts, prescribing the uses to which property in such districts may be put or used, providing for the establishment of building set-back lines, providing a penalty for violation thereof, and repealing all ordinances or parts of ordinances in conflict therewith."

The ordinance is comprehensive and includes all the territory within the boundaries of the city which is divided into classes as follows: Class I. Residential District: For single family dwellings with appurtenances such as a garage having not more than three motor vehicles, summer house, pergola and greenhouse, all for private use. Class II. Residen-

tial District: For single and two family dwellings, flats, apartment houses, boarding-houses, hotels, multiple dwellings and the like. Class II. Special Temporary Residence District: For temporary residences for period of two years, etc. Class III. Business District: General assemblage buildings such as assembly halls, auditoriums, churches, theaters and similar uses. Also certain business purposes such as hotels, stores, offices, restaurants and many others. Likewise public buildings, including courthouses, schools, libraries, hospitals and others, apartment houses, lodging-houses, clubs, etc. Class IV: Unrestricted District: All uses allowed or optional or prohibited in other districts subject to general ordinances of the city are permitted. Boundaries of districts are to coincide with streets, alleys or lot lines. Buildings and uses thereof in existence at the passage of the ordinance not conforming thereto are protected and allowed in any district except as against change, enlargement or 90 per cent destruction by fire. Provision is made for change of business or installation of prohibited business of certain kinds subject to local option of property holders. Boundaries of districts may be changed or the ordinance amended by council after compliance with certain conditions about public hearings, remonstrances, etc. It is said in Section 15:

"The provisions of this ordinance shall be held to be the minimum requirements for the preservation of public safety, health, convenience, comfort, prosperity and general welfare of the people of the City of Portland."

2. Without dispute, the site of the proposed building is within a district where a structure to be used as a creamery employing over five persons is for-

bidden.  Passing the criticism upon the complaints, that they state only conclusions of law and not facts from which a court can deduce any legal result, we address ourselves to the merits of the zoning ordinance as quoted in the supplemental complaints.  At the outset, referring to Section 15, already quoted, as stated in *Camas Stage Co., Inc.,* v. *Kozer,* 104 Or. 600, 606 (209 Pac. 95, 25 A. L. R. 27):

"We hold that—'The declared purpose of the act is to be accepted as true, unless incompatible with its meaning and effect.' *White Dental Mfg. Co.* v. *Commonwealth,* 212 Mass. 35 (98 N. E. 1056, Ann. Cas. 1913C, 805, 808); citing *Hazen* v. *Essex Co.,* 12 Cush. (Mass.) 475; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 145, (55 L. Ed. 389, 31 Sup. Ct. Rep. 342, Ann. Cas. 1912B, 1312)."

3. The testimony shows that the property of the plaintiffs formerly had been occupied only by a church which had been partially destroyed by fire. They had purchased it in that condition and had not put it to any other use.  It is not an instance where they have a vested use of the property, such as described in *City of Portland* v. *Yates,* 102 Or. 513 (199 Pac. 184, 203 Pac. 319).  In an opinion written by Mr. Justice BEAN in that case we are informed that the defendant had applied to the city authorities and had been granted the privilege under its then existing ordinances, to erect an electric sign upon a building occupied by himself.  He put up the sign at considerable expense and at the time the action was begun it was secure and safe and did not interfere with the rights or convenience of anyone and so its maintenance had become a *quasi* vested right.  After the sign had been installed, an ordinance was enacted changing the regulation of

such signs in minor immaterial particulars and it
was held to be an arbitrary and void exercise of
the police power because it had no relation to the
peace, health, safety or welfare of the city or its
people. Here no such situation is presented. In
advance of any use of the property by the plain-
tiffs in the manner proposed, the people of the city
enacted the zoning ordinance and the question is
whether that legislation is valid or void.

4. It may be premised that injunction is a proper
remedy to prevent the enforcement of void legisla-
tion: *Sandys* v. *Williams,* 46 Or. 327, (80 Pac. 642);
*Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391,
1128); *Sherod* v. *Aitchison,* 71 Or. 446 (142 Pac.
351, Ann. Cas. 1916C, 1151); *Chan Sing* v. *Astoria,*
79 Or. 411 (155 Pac. 378); *Winslow* v. *Fleischner,*
110 Or. 554 (223 Pac. 922), in which last case Mr.
Justice CoSHOW points out the scope of equity powers
in such cases, notwithstanding there may be some
remedy at law.

5. The general rule relating to local regulation
concerning the use of property for business pur-
poses in thickly inhabited cities is aptly stated by
Mr. Justice PITNEY in *Reinman* v. *City of Little
Rock,* 237 U. S. 171 (59 L. Ed. 900, 35 Sup. Ct. Rep.
511), thus:

"While such regulations are subject to judicial
scrutiny upon fundamental grounds, yet a consid-
erable latitude of discretion must be accorded to
the law-making power; and so long as the regulation
in question is not shown to be clearly unreasonable
and arbitrary, and operates uniformly upon all per-
sons similarly situated in the particular district, the
district itself not appearing to have been arbitrarily
selected, it cannot be judicially declared that there
is a deprivation of property without due process

of law, or a denial of the equal protection of the laws, within the meaning of the Fourteenth Amendment." Citing many precedents.

6, 7. The exercise of the police power is a matter of legislation and the courts cannot interfere with such expressions of the power unless it is shown that it is purely arbitrary or that the legislation has no connection with or bearing upon legitimate objects sought to be attained. It is plain that governmental agencies entrusted with the police power, as the City of Portland is, can enact laws regulating the use of property for business purposes. Otherwise it would be permissible to erect a powder-mill on the site of the Hotel Portland or to install a glue factory next to the city hall or to erect a boiler-shop adjacent to the First Congregational Church. Such things would be legitimate but for the restraint of the police power. The difference between such instances and the present contention is in degree and not in principle.

8. Applied to the present situation, it is very clear that a creamery, with its boilers, milk cans, delivery trucks, processes of manufacturing, and fire risks of the business, requires treatment in the way of regulation different from that appropriate to a mere private dwelling. In other words, there is a fair basis of classification. It is not for us to say in exercise of judicial authority whether or not those reasons are such as would control us if we were enacting an ordinance. That is a matter to influence the legislative power, and if a classification can be made resting upon just principles it is a valid exercise of the police power.

The property of the plaintiffs is not taken. They have precisely the same estate that they had be-

fore. All that the people of Portland have said is, that within certain districts certain businesses shall not be carried on and the property situated therein shall not be used for such undertakings. It is far more convenient and conducive to the welfare of the city that enterprises of certain kinds shall be located in certain districts than to have them scattered promiscuously throughout the municipality. It makes the administration of the regulations less expensive and hence easier upon the taxpayer for one thing. It is pointed out also in the testimony as illustrating this that lighter pavement is sufficient in purely resident districts than in parts of the city where manufactories are carried on, and that the fire risk is increased in such places over that of purely residence districts.

In brief, the people of the city have exercised their legislative discretion in the application of the police power. They have not singled out the plaintiffs as special objects of that legislation, but have treated all alike, including the whole city in the operation of the ordinance and have undertaken only to regulate the use of property and not to deprive owners of any part of their estate therein.

9. There is no dispute about the facts. All the testimony portrayed a contest that ought to have been carried on at the hustings. The effort of the plaintiffs was to show that the residences in that district were old and dilapidated, and that within a few blocks there were other manufacturing institutions. The defendants introduced testimony to the effect that the residences were in good repair and constituted a great majority of the buildings in that vicinity and that near by were various public schools which would be prejudiced by the advent of manu-

facturing establishments. Such things cannot affect the administration of the ordinance. The ordinance itself is an accomplished fact. The contest against its passage was foreclosed by the election. It is within the police power of the city. It is general in its application and the classifications promulgated are founded on reasonable distinctions. The case ought to have been settled on demurrer. The ordinance being in our judgment a valid exercise of the police power, the decree of the Circuit Court is reversed and the suit is dismissed.

REVERSED AND DISMISSED.

BEAN, BROWN, COSHOW and BELT, JJ., concur.

McBRIDE, C. J., Dissenting.—It is not my custom to write extended dissenting opinions but the case at bar is so important and the consequences of the reversal of the decree of the court below would be so far reaching, I do not feel that I will be justified in permitting the prevailing opinion to pass without comment. I am frank to admit that the theory of the majority is supported by many reputable authorities, and perhaps by a majority in number of the later authorities, who seem to be much taken with the prevailing idea in regard to the "city beautiful" as contradistinguished from the somewhat old-fashioned idea of the "city useful."

It has been my lot to see the City of Portland grow from a little muddy village into its present condition of progress and beauty. From Fourth Street on the west side of the Willamette to the last building on the heights west of the city, it has grown, in my memory, from a sparse collection of residences interspersed with small business buildings. These later were succeeded by more conspicu-

ous business buildings while the residences retreated westward to that part of the city where we now find them and which constitute one of the principal attractions of the city. As business conditions required, the eastern portion of the West Side, the residential district, moved still farther west until now, where the early residences and the small business buildings of fifty or sixty years ago occupied most of the territory, we find that same portion covered with magnificent business buildings, banks, hotels and other structures, which are at once the pride of and credit to the city, while farther west, its residential district exceeds in beauty that of any other city in the northwest. And all this has been accomplished gradually, without the aid of any so-called zoning ordinance, but in obedience to the natural exigencies of business.

The same conditions, to a limited extent, have existed on the East Side, and I confess that, in spite of learned opinions to the contrary by many courts, I have always felt that when a man invested his means in a lot and proceeded to improve it by the erection of any sort of building, which in itself, or in the manner intended to be used, was not a nuisance, it was his right so to do; and that any abridgment of that right, for the benefit of the public, or for the sake of beauty or other esthetic reason, constituted a taking of his property without compensation.

As is said in the prevailing opinion, the plaintiff still has his property, but, before the zoning ordinance was passed, he had an unrestricted right to use it for any business not constituting a public or private nuisance. Now, he must confine its use to a particular object, or leave it vacant and un-

remunerative. "You take my house when you take that which doth support my house," says Shakespeare, and I do not see any way around the proposition that, when the public deprives an owner of an element, which goes to make up the value of his property, to wit, the right to use it for any lawful purpose, not a nuisance or dangerous to the community, it takes from him an interest in his property, and is for that reason unconstitutional.

The case is very well stated by Mr. Justice BURNETT, but a brief restatement may not be unprofitable.

The respondents in this case sought to erect a building on their land in East Pine Street, City of Portland, for the purpose of conducting a grocery store, milk and creamery business, but could not do so because of the zoning ordinance enacted November 4, 1924, which classified this property, on which the proposed store was to be built, as residential. Suit was brought to enjoin the city authorities from enforcing the provisions of this ordinance on the ground that they contravened the due process of law clause of the fourteenth amendment to the Constitution, and also the state Constitution. The lower court declared the ordinance void as depriving the plaintiffs of the proper use of their property in contravention of their constitutional rights, and the city authorities have appealed to this court.

The ordinance enacted November 4, 1924, affecting the entire City of Portland, divides the city into zones, and restricts these zones to certain uses. In the residential zones, only single dwelling-houses and outhouses can be constructed, and all business is restricted, except that usually carried on in homes such as dentistry or medicine. Then there are other

zones less exclusive and in which two family houses can be built as well as apartment houses, and then there are zones for business. And in this manner the entire city, having a population of approximately 300,000 people and covering hundreds of square miles, is put under the exclusive control of this zoning ordinance both as to the kind of buildings to be built and the nature of the business to be carried on in the different localities.

The zoning ordinance also has the so-called local option feature giving a majority of the neighbors in certain localities the right to modify the rigor of the ordinance and allowing by vote some prohibited business to be carried on, or building constructed. Another feature is the power given to change the boundaries of the zones, thus giving it elasticity at the mere will of the council without any external utilitarian standard.

When it is considered that the entire City of Portland is subject to this ordinance, and that it constitutes a direct limitation on all the building and business carried on, its far-reaching scope is seen and raises the question of the source of such power vested in the city officials without any guide but their own will and the ordinance.

If it were not for the strange theory, which has grown up in many jurisdictions, that the police power is of so expansive a nature that it may overshadow and overrule constitutional rights, it would require no great degree of persuasion to convince us that the ordinance was void. There is, however, much respectable authority to the contrary, which requires a careful examination of the principles involved so that the court will not lightly set aside an ordi-

nance, which, because of its enactment, has every presumption of validity in its favor.

The respondents here are owners in fee of the land located on East Thirteenth and Pine Streets. The store, which they propose to erect upon it from the evidence, is an ordinary retail store for their own profit, including a creamery where milk products are manufactured and distributed. Such a store on the property would be profitable. A dwelling-house might not. There is no semblance of a nuisance in the nature of the proposed business. A grocery-store, where groceries are sold, milk, cream and butter distributed and lunches served to customers, cannot be held either a nuisance or a *quasi* nuisance. Neither can we anticipate that it may become a nuisance: *Boyd* v. *Board of Council of Frankfort,* 117 Ky. 119 (77 S. W. 669, 111 Am. St. Rep. 240); *Ignaciunas* v. *Town of Nutley,* 99 N. J. L. 389 (125 Atl. 121). There is nothing in the evidence to show that such a business or store building would affect detrimentally the public health, public morals, public safety or general welfare of the City of Portland although there is a mild pretense that it might do so. It is condemned by the ordinance merely because it is a business. The appellants' answer recites:

"Defendants admit that said zoning ordinance classifies the property mentioned in said supplemental complaint, and a large area adjacent thereto, as a residential district and prohibits the erection therein of any building for a commercial or industrial purpose."

The question then is whether a legitimate business can be prohibited or the construction of a use-

ful building interfered with when it is *prima facie* outside of the scope of the police power.

A lawful business, harmless in its nature and not dangerous to the public either directly or indirectly, cannot be subjected to any police regulation whatever: 6 R. C. L. 219.

*A fortiori* it cannot be completely prohibited: *Adams* v. *Tanner,* 244 U. S. 590 (61 L. Ed. 1336, 37 Sup. Ct. Rep. 662, Ann. Cas. 1917D, 973, L. R. A. 1917F, 1163); *Hill Military Academy* v. *Pierce* (U. S.), 45 Sup. Ct. Rep. 571; *Ex parte Dickey,* 144 Cal. 234 (77 Pac. 924, 103 Am. St. Rep. 82, 1 Ann. Cas. 428, 66 L. R. A. 928); *State* v. *Redmon,* 134 Wis. 89 (114 N. W. 137, 126 Am. St. Rep. 1003, 15 Ann. Cas. 408, 14 L. R. A. (N. S.) 229); *Vanhorne's Lessee* v. *Dorrance,* 2 Dall. 304 (1 L. Ed. 391, Fed. Cas. No. 16,857).

In *Goldman* v. *Crowther* (Md.), 128 Atl. 50, it is said:

"Private use and ownership of property has always been regarded by the courts of this state as one of the most valuable privileges guaranteed by its constitution, as one of the most durable and solid foundations of its government, and as indispensably necessary to the prosperity and welfare of the people, and the substitution of communal or state ownership for that system has not heretofore been regarded as within the powers of the court or the legislature."

The fourteenth amendment to the federal Constitution protects personal property rights from state interference, and all the states have similar constitutional provisions, but property burdened or regulated within the police power of the state is not in conflict with the due process of law clause of the Constitution, for the reason that the proper exer-

cise of the police power does not constitute a taking contrary to due process of law. So that in every case we must determine whether a taking under the police power is justified according to its limitations. The police power must have its limitations, otherwise it would transcend the Constitution and nullify the due process of law clause. Vested rights cannot be impaired or destroyed under the pretense that the taking is under the police power when the contrary is the fact. While the police power in its nature is difficult to define, because it covers such a multitudinous number of special instances for its exercise, nevertheless the principle upon which it operates is not difficult to apprehend. Every well-governed state must have the power to regulate its internal affairs and the duties and obligations which each member of the body politic owes to his neighbor. The principle, upon which the police power is based, is best expressed in the maxim: *sic utere tuo, ut alienum non laedas.*

Chief Justice Shaw defines the police power by way of regulation, and not confiscation, in *Commonwealth* v. *Alger,* 7 Cush. (Mass.) 53, 84, as follows:

"We think it is a settled principle, growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others, having an equal right to the enjoyment of their property, nor injurious to the rights of the community. * * Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment, as shall prevent them from being injurious and to such reasonable restraints and regulations established by law, as the legislature, under

the governing and controlling power vested in them by the constitution, may think necessary and expedient. * *

"But he is restrained; not because the public have occasion to make the like use, or to make any use of the property, or to take any benefit or profit to themselves from it, but because it would be a noxious use, contrary to the maxim, *sic utere tuo, ut alienum non laedas.* It is not an appropriation of the property to a public use, but the restraint of an injurious private use by the owner, and is therefore not within the principle of property taken under the right of eminent domain."

This maxim comprehends a regulatory rule as distinguished from a confiscatory rule. All matters relating to the public health, public morals, and public safety are clearly within the police power. The chief trouble in the definition of the police power seems to be to ascertain the limitations of the general welfare phase of the police power. When can the police power be exercised for the general welfare? Can a man's property or vested rights be interfered with apart from matters relating to the public health, public morals or public safety, and be placed alone on the grounds of public welfare apart from these considerations? In other words, is the general welfare alone a sufficient basis for the exercise of the police power apart from any other reasons? We believe that, generally speaking, it is not. A man's vested rights cannot be taken away for the general welfare without just compensation. Property taken for the general welfare alone is equivalent to a taking for public use and comes more properly within the field of eminent domain. If we are to allow the taking of private property for the general welfare alone

and without regard to the injurious use of such property, we have reached the point in our judicial evolution where private property has no further protection except the whim of the dominant majority. There is no escape from the logic of this situation. The Supreme Court of the United States in a large number of recent decisions has emphatically pronounced against the doctrine that the general welfare alone, either real or fancied, is a sufficient ground for the exercise of the police power.

In *Hill Military Academy* v. *Pierce* (U. S.), 45 Sup. Ct. Rep. 571, the Supreme Court held that no theory of general welfare could take away from the parent the right to supervise the education of his own child.

In *Meyer* v. *Nebraska,* 262 U. S. 390 (67 L. Ed. 1042, 43 Sup. Ct. Rep. 625, 29 A. L. R. 1446), it was decided that the liberty of the children to acquire a foreign language could not be prohibited by the delusive notion that the learning of a foreign language was detrimental to the public welfare.

In *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393 (67 L. Ed. 322, 43 Sup. Ct. Rep. 158, 28 A. L. R. 1321), it was decided that the state for the general welfare could not prohibit the mining of coal by the miners in such a way as to protect the surface property of the surface dwellers, but could mine to the full extent of their right.

In *Eubank* v. *Richmond,* 226 U. S. 137 (57 L. Ed. 156, 33 Sup. Ct. Rep. 76, Ann. Cas. 1914B, 192, 42 L. R. A. (N. S.) 1123), where a city ordinance restricted the use of private property and established a building line within a certain distance from the street beyond which no building could be constructed, the ordinance was held void.

In *Chastelton Corp.* v. *Sinclair,* 264 U. S. 546 (68 L. Ed. 841, 44 Sup. Ct. Rep. 405), the order of the rent commission of the District of Columbia cutting down rents for apartments in Washington was declared unconstitutional by Mr. Justice HOLMES as an unwarranted interference with private business.

In *Adkins* v. *Children's Hospital,* 261 U. S. 525 (67 L. Ed. 785, 43 Sup. Ct. Rep. 394, 24 A. L. R. 1238), the law giving to a regularly constituted board and its advisers the power to fix for women a minimum wage sufficient to maintain them in health and good morals was held repugnant to the provisions of the federal Constitution against deprivation of liberty without due process of law.

See also to the same effect: *Wolff Packing Co.* v. *Court of Industrial Relations,* 262 U. S. 522 (67 L. Ed. 1103, 43 Sup. Ct. Rep. 630, 27 A. L. R. 1280), where Chief Justice TAFT held the Industrial Court Act to fix wages in case of disputes to be invalid.

In *Burns Baking Co.* v. *Bryan,* 264 U. S. 504 (68 L. Ed. 813, 44 Sup. Ct. Rep. 412, 32 A. L. R. 661), the Supreme Court held unconstitutional a law requiring bakers to make a loaf of bread of certain fixed dimensions. Mr. Justice BUTLER said:

"But a state may not, under the guise of protecting the public arbitrarily interfere with private business or prohibit lawful occupation or impose unreasonable and unnecessary restrictions upon them."

A private business which is harmless cannot be sacrificed on the altar of the public welfare. It is only when it is harmful in its nature or capable of working injury that it may be regulated for the public welfare. Or it might be put in another way, that the public welfare never requires the sacrifice or regulation of a legitimate private business

incapable of working harm: *Vanhorne's Lessee* v. *Dorrance,* 2 Dall. 304 (1 L. Ed. 391, Fed. Cas. No. 16,857).

The mere act of restricting or curtailing rights of liberty or property cannot of itself and by its own power amount to general welfare, for it is such arbitrary action that the Constitution prohibits. And without there being something to act upon besides a harmless private business, the exercise of governmental prerogative exceeds the scope and purpose of the police power, and becomes mere unauthorized usurpation: *Coppage* v. *Kansas,* 236 U. S. 1 (59 L. Ed. 441, 35 Sup. Ct. Rep. 240, L. R. A. 1915C, 960).

It follows that any private business in which there is no vice detrimental to the public, but fully legitimate and harmless, cannot be interfered with, burdened or destroyed under the guise of public welfare. It is conceded, of course, that the police power can stop a nuisance according to the maxim, *sic utere tuo, ut alienum non laedas.*

For these reasons we do not desire to follow the cases from other states in which zoning ordinances affecting vested rights have been held valid although enacted under the guise of general welfare and having no other utilitarian basis except the esthetic tastes of certain groups of citizens living in favorable localities, and who desire segregation apart from stores and business for their own convenience and gratification.

Zoning ordinances created for the supposed general welfare because of esthetic reasons have been held void in the following cases:

*Ignaciunas* v. *Town of Nutley,* 99 N. J. L. 389 (125 Atl. 121). In that case Chief Justice GUM-MERE said:

"The narrow question, accordingly, which we are called upon to consider in the determination of this case is, Will the erection and user of a combined store and dwelling house upon the lot of the respondent constitute a menace to the health or the safety of the people of the town of Nutley, or to the general welfare of the municipality? That the mere erection of this building, regardless of the use to which it may afterward be put, is likely to be injurious to the health or safety of the residents of the town is asserted, but, practically, not argued by counsel. And, as we see it, no well grounded argument can be made in support of the assertion. * * The bald assertion of counsel is that the mere presence of a store building in the so-called residence district of Nutley is in itself a menace to the public health and the public safety, notwithstanding that the business carried on therein will not constitute such a menace. Both common experience and common sense demonstrate the unsoundness of such an assertion. On what theory can it be said that the restraining of the respondent from erecting a combined store and dwelling house upon his property will tend to promote the general welfare of the community? It is probable that its presence there, without regard to its use, would be objectionable to other property owners in the immediate neighborhood, who would prefer that business places should not be established in that part of the town. But that is quite immaterial, for such property owners have not acquired the right to impose upon owners of other property in the vicinity any restrictions upon the lawful use thereof."

In *Goldman* v. *Crowther* (Md.), 128 Atl. 50, 55–60, the Supreme Court of Maryland was confronted with a similar situation under the zoning ordinance in Baltimore City. The court said:

"In dealing with the validity of the ordinance before us, therefore, we will start with the premise

that if its purpose and provisions can only be justified by invoking the police power of the State, they must bear some substantial cognizable relation to the public health, the public security, the public morals, the public welfare, or the public comfort. * *

"One of the most striking manifestations of this tendency is the great volume of so-called zoning legislation which has in recent years been written into the laws of the several states, of which the ordinance before us is an apt illustration and which subject private property to an infinite variety and number of restrictions limiting its use, many of which rest for sanction upon no more definite or substantial foundation than that they are supposed to be in the interest of general prosperity or the public convenience. * * But the question before us goes much further than that; it is whether the power to hold, use, and enjoy property can be restricted or taken away by the state under the guise of the police power for purely esthetic reasons or for any such elastic and indeterminate object as the general prosperity without compensation. * *

"Their only apparent purpose was to prevent the encroachment of business establishments of any kind upon residential territory, regardless of whether they affected in any degree the public health, morals, safety, or welfare. In effecting that purpose they take from the property owner the right to use his property for any purpose not sanctioned by the letter of the ordinance or allowed by the practically unfettered discretion of the board of zoning appeals, and deprive him of privileges guaranteed by article 23 of the Maryland Bill of Rights.

"We have reached the conclusion, therefore, that so much of the ordinance as attempts to regulate and restrict the use of property in Baltimore City is void."

In *Spann* v. *Dallas*, 111 Tex. 350 (235 S. W. 513, 516, 19 A. L. R. 1387), the Supreme Court of Texas

declared the city zoning ordinance of Dallas void. The court said:

"The ordinance visits upon ordinary retail stores, engaged in a useful business, conducted in an orderly manner, frequented and availed of by respectable people, and doubtless serving as a convenience to many, all the proscription visited upon common nuisances."

A majority of the cases hold a zoning ordinance based on esthetic grounds void, and it cannot be upheld for fanciful reasons: *People* v. *Chicago,* 261 Ill. 16 (103 N. E. 609, Ann. Cas. 1915A, 292, 49 L. R. A. (N. S.) 438); *St. Louis* v. *Dorr,* 145 Mo. 466 (41 S. W. 1094, 46 S. W. 976, 68 Am. St. Rep. 575, 42 L. R. A. 686); *Eubank* v. *Richmond,* 226 U. S. 137 (57 L. Ed. 156, 33 Sup. Ct. Rep. 76, Ann. Cas. 1914B, 192, 42 L. R. A. (N. S.) 1123); *Clements* v. *McCabe,* 210 Mich. 207 (177 N. W. 722); *Willison* v. *Cooke,* 54 Colo. 320 (130 Pac. 828, 44 L. R. A. (N. S.) 1030); *Calvo* v. *New Orleans,* 136 La. 480 (67 South. 338); 2 Dillon on Municipal Corp. (5 ed.), § 695; *Byrne* v. *Maryland Realty Co.,* 129 Md. 202 (98 Atl. 547, L. R. A. 1917A, 1216); *Quintini* v. *Board of Bay St. Louis,* 64 Miss. 483 (1 South. 625, 60 Am. Rep. 62); *Commonwealth* v. *Boston Adv. Co.,* 188 Mass. 348 (74 N. E. 601, 108 Am. St. Rep. 494, 69 L. R. A. 817); *Fruth* v. *Board of Affairs,* 75 W. Va. 456 (84 S. E. 105, L. R. A. 1915C, 981); *State* v. *Stahlman,* 81 W. Va. 335 (94 S. E. 497, L. R. A. 1918C, 77); *Varney & Green* v. *Williams,* 155 Cal. 318 (100 Pac. 867, 132 Am. St. Rep. 88, 21 L. R. A. (N. S.) 741); *State ex rel. Lachtman* v. *Houghton,* 134 Minn. 226 (158 N. W. 1017, L. R. A. 1917F, 1050); *Handy* v. *South Orange* (N. J.), 118 Atl. 838; *State* v. *McKelvey,* 301 Mo. 130 (256 S. W.

495); *Ambler Realty Co.* v. *Euclid,* 297 Fed. 307;
*People* v. *Walsh,* 120 Misc. Rep. 467 (199 N. Y. Supp.
534); *City of Utica* v. *Hanna,* 195 N. Y. Supp. 225
(202 App. Div. 610); *Piper* v. *Ekern,* 180 Wis. 586
(194 N. W. 159, 34 A. L. R. 32); *Passaic* v. *Paterson Bill Posting Co.,* 72 N. J. L. 285 (62 Atl. 267, 111
Am. St. Rep. 676, 5 Ann. Cas. 995); *Fitzhugh* v.
*Jackson,* 132 Miss. 585 (97 South. 190, 33 A. L. R.
279).

A great number of states have upheld zoning
ordinances based on esthetic reasons.

In *Ware* v. *City of Wichita,* 113 Kan. 153, 157
(214 Pac. 99), the Supreme Court of Kansas said:

"With the march of time, however, the scope of
the legitimate exercise of the police power is not
so narrowly restricted by judicial interpretation as
it used to be. There is an aesthetic and cultural
side of municipal development which may be fostered
within reasonable limitations."

And in *State* v. *Harper,* 182 Wis. 148 (196 N. W.
451, 33 A. L. R. 269), the Supreme Court said:

"The benefits to be derived by cities adopting
such regulations may be summarized as follows:
They attract a desirable and assure a permanent
citizenship; they foster pride in and attachment to
the city; they promote happiness and contentment;
they stabilize the use and value of property and promote the peace, tranquillity, and good order of the
city."

In *Miller* v. *Board of Public Works* (Cal.), 234
Pac. 381 (38 A. L. R. 1479), the Supreme Court
of California, upholding the zoning ordinance of the
City of Los Angeles according to Judge LENNON,
said:

"The establishment of such districts is for the general welfare because it tends to promote and perpetuate the American home."

The Supreme Court of Massachusetts, in upholding the zoning ordinance of that state, said in *Brett v. Building Commissioner of Brookline,* 250 Mass. 73 (145 N. E. 269, 271):

"It may be a reasonable view that the health and general physical and mental welfare of society would be promoted by each family dwelling in a house by itself. Increase in fresh air, freedom for the play of children and of movement for adults, the opportunity to cultivate a bit of land, and the reduction in the spread of contagious diseases may be thought to be advanced by a general custom that each family live in a house standing by itself with its own curtilage. These features of family life are equally essential or equally advantageous for all inhabitants, whatever may be their social standing or material prosperity. There is nothing on the face of this by law to indicate that it will not operate indifferently for the general benefit."

These excerpts from the foregoing opinions by the Supreme Court of Kansas, Wisconsin, California and Massachusetts, upholding zoning ordinances, show the flimsy and unsound pretexts advanced as grounds for sustaining them. The Kansas court, in the face of the general rule heretofore sanctioned by all the courts, declares that the police power may be invoked for esthetic considerations. The Supreme Court of Massachusetts and of California declare that it is more healthy to live in a single dwelling-house than in a double dwelling-house. But we cannot take judicial notice of this fact, if it be true, and we doubt that it is true. Such reasons as are given by the foregoing cases for upholding

the zoning ordinances do not strike us as substantial.
Possible or conjectural good to others is too nebulous
a reason to deprive a person of his property when it
is an actual fact that these zoning ordinances are
usually enacted for solely esthetic purposes.  Fic-
titious reasons having no foundation in fact should
not be given as a reason for sustaining their validity.
I cannot see how grouping dwelling-houses in one
locality, and grouping apartment houses in another
locality, and grouping stores in another locality can
add to the general welfare.  On the contrary, *prima
facie* such a grouping would seem to be detrimental,
as it would interfere with natural growth and prog-
ress.  Uniformity for the sake of uniformity can-
not be upheld to advance the general welfare.  That
the general welfare is advanced by these zoning ordi-
nances is in my opinion at least doubtful, and cer-
tainly reasons which are doubtful cannot form the
basis of depriving one of his constitutional rights.
For that reason I cannot follow the reasoning of the
above cases.  It is a well-settled rule in the exercise
of the police power that the end to be accomplished
must come within the scope of the police power and
the means to accomplish that end must be reasonably
adapted to bring about the desired result.  See *State*
v. *Redmon,* 134 Wis. 89 (114 N. W. 137, 126 Am. St.
Rep. 1003, 15 Ann. Cas. 408, 14 L. R. A. (N. S.) 229).

In *Mugler* v. *Kansas,* 123 U. S. 623 (31 L. Ed. 205,
210, 8 Sup. Ct. Rep. 273), Mr. Justice HARLAN said:

"The courts are not bound by mere forms, nor are
they to be misled by mere pretenses.  They are at
liberty—indeed, are under a solemn duty—to took
at the substance of things, whenever they enter upon
the inquiry whether the legislature has transcended
the limits of its authority.  If, therefore, a statute

purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

General welfare alone apart from the principle *sic utere tuo, ut alienum non laedas,* or some present public emergency, does not justify the taking of property under the guise of police power.

In the present case property is taken from A and given to B because B is given the right to prevent the beneficial use of A's property and this is done under the guise of public welfare, but it does not appear that such taking is for the public welfare.

In *Lawton* v. *Steele,* 152 U. S. 133, 137 (38 L. Ed. 385, 14 Sup. Ct. Rep. 499), it is said:

"To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon the individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."

I also believe that this zoning ordinance is void in that it places arbitrary power in the hands of the council.

It is an essential principle of American constitutional law that this shall be a government of laws and not of men. Giving to the council and neighbors the right to change the boundaries of the zoning law at will and without any external legal standard by which such changes could be made is a grant of arbitrary power: *Yick Wo* v. *Hopkins,* 118 U. S. 356 (30 L. Ed. 220, 6 Sup. Ct. Rep. 1064); *Eubank* v. *Richmond,* 226 U. S. 137 (57 L. Ed. 156, 33 Sup. Ct. Rep. 76, Ann. Cas. 1914B, 192, 42 L. R. A. (N. S.) 1123); *Barthet* v. *New Orleans* (C. C.), 24 Fed. 563; *State* v. *Mahner,* 43 La. Ann. 498 (9 South. 481); *Montgomery* v. *West,* 149 Ala. 311 (42 South. 1000, 123 Am. St. Rep. 33, 13 Ann. Cas. 651, 9 L. R. A. (N. S.) 659); *May* v. *People,* 1 Colo. App. 157 (27 Pac. 1010); *Baltimore* v. *Radeske,* 49 Md. 230 (33 Am. Rep. 239); *Hagerstown* v. *Baltimore & O. R. Co.,* 107 Md. 178 (68 Atl. 490, 126 Am. St. Rep. 382); *Cicero Lumber Co.* v. *Cicero,* 176 Ill. 9 (51 N. E. 758, 68 Am. St. Rep. 155, 42 L. R. A. 696); *Noel* v. *People,* 187 Ill. 587 (58 N. E. 616, 79 Am. St. Rep. 238, 52 L. R. A. 287); *Richmond* v. *Dudley,* 129 Ind. 112 (28 N. E. 312, 28 Am. St. Rep. 180, 13 L. R. A. 587); *Elkart* v. *Murray,* 165 Ind. 304 (75 N. E. 593, 112 Am. St. Rep. 228, 6 Ann. Cas. 748, 1 L. R. A. (N. S.) 940); *Bear* v. *Cedar Rapids,* 147 Iowa, 341 (126 N. W. 324, 27 L. R. A. (N. S.) 1150). See cases cited in *Ex parte Broussard,* 74 Tex. Cr. Rep. 333 (169 S. W. 660, Ann. Cas. 1917E, 919, L. R. A. 1918B, 1097).

Upon full consideration of the case, the decision of the lower court should be affirmed.

RAND, J., Dissenting.—Plaintiffs are the owners of a tract of land 100 feet square at the southeast corner of Thirteenth and East Pine Streets in the

City of Portland. They made written application to the city officials for permission to erect on said property a one-story concrete and brick building to be used as a store and creamery, but their application was denied because of an ordinance which prohibited the erection of any building on said property to be used for said purpose. Plaintiffs thereupon commenced suit to enjoin the enforcement of said ordinance, contending that the ordinance was unconstitutional and void in that it operated to deprive them of their property without due process of law and was a taking of private property for public use without just compensation. From a decree holding said ordinance to be unconstitutional and void the city has appealed.

The ordinance referred to is what is known as a zoning ordinance which divides the city into districts and imposes on all private property in such districts uniform building restrictions relating to use. The ordinance imposes no restrictions as to the height, bulk or area of buildings, but restricts as to use only. Section 3873, Or. L., authorizes the city council by ordinance to divide the city into districts within some of which it shall be lawful and within others unlawful to erect or maintain certain buildings or to carry on certain trades or callings, or within which the height and bulk of future buildings shall be limited, and by Section 3874, Or. L., the council may by ordinance regulate, restrict and segregate the location of industries, the several classes of business, trades or callings, the location of apartment or tenement houses, club-houses, group residences, two family dwellings, single family dwellings, and the several classes of public and semi-public buildings,

and the location of buildings or property designed for specified uses, ''and may divide the city into districts of such number, shape and area as the council may deem best suited to carry out the purposes of this act,'' etc.

The property in question is located in what is designated in the ordinance as ''Class II. Residential District.'' The ordinance makes it unlawful for any property owner in said district to erect, alter or maintain therein any building or structure other than single family dwellings, two family dwellings, flats, apartment houses, boarding-houses, hotels, multiple dwellings, parks, playgrounds, truck gardens, farms, and in connection with residential buildings suitable outbuildings such as private garages for not more than three motor vehicles, a pergola, a summer house, a greenhouse or hothouse for private use only, and prohibits the erection, alteration or maintenance in said district of any building used for any other purpose than those expressly designated. It also prohibits the occupants of the buildings authorized by the ordinance from engaging in any professions except such ''as are ordinarily carried on in the home, including the home office of a physician, surgeon, or dentist.'' The ordinance does, however, designate certain ''local option uses'' which may be made of property within the district upon the consent being obtained of more than 50 per cent of the owners of adjoining or adjacent property within certain prescribed distances. The local option uses thus permitted upon consent of adjoining property owners are a baby home, billboard, boys' and girls' aid home, a church, convent, garage (large or public), a greenhouse, hospital, provided it is not used for the treatment of insane or narcotic cases, a hothouse, library,

monastery, public service building, nursery, old people's home, orphanage, parish house, postoffice, railroad station, refuge home, sanitarium, provided the same is not used for the treatment of insane or narcotic cases, signboard, undertaking parlor, chapel and similar uses. The uses which are absolutely prohibited by the ordinance in districts of the class referred to "include stores, mercantile buildings, manufacturing plants, places of amusement, and similar uses."

The evidence discloses that but one-half block west of plaintiffs' premises, the entire area extending east from the Willamette River to the center of the block between East Twelfth and East Thirteenth Streets and running north and south for several miles is all zoned as a business district wherein the owners of property are authorized to erect and maintain buildings such as plaintiffs' proposed building, and to use such buildings for the purposes proposed by plaintiffs. It also discloses that the same condition exists both to the north and south of plaintiffs' premises,— to the north but a block and a half therefrom and to the south but one block therefrom, and that immediately to the west and south of plaintiffs' premises, between these premises and the district not restricted in respect to store buildings, a part of the land is vacant, and where there are buildings they are, for the most part, old and dilapidated, some of which are used for business purposes.

Plaintiffs contend that the restrictions and limitations which are imposed by the ordinance upon their use of their property constitute a taking for public use without just compensation in violation of Article I, Section 18 of the Constitution of the state, which guar-

antees that private property shall not be taken for public use without just compensation, and, except in case of the state, without such compensation being first assessed and tendered. Hence, if this restriction upon the use of the premises is an exercise of the power of eminent domain, it cannot be sustained without just compensation being first assessed and tendered, which has not been done. But this ordinance is an attempt to exercise the police powers of the state and not the power of eminent domain, and therefore the case does not come within that constitutional guarantee if the regulation imposed by the ordinance is a valid exercise of the police powers. The power which the city is attempting to exercise under this ordinance is one which cannot be exercised at all unless there can be found some justification for its exercise under the police power of the state, while if the restriction is a valid exercise of the police power, the injury resulting to plaintiffs is of no importance for in such case the law affords no remedy whereby compensation can be recovered for any loss or injury which may result to plaintiffs therefrom.

That a municipality in the exercise of the police powers delegated to it by the legislature may regulate the conduct of an individual or the use of his property is beyond dispute, but before the municipality can lawfully do so, the regulation must have some reasonable relation to some end within the competency of the municipality. It is not within the competency of a municipality to regulate or restrict the lawful use of property unless such regulation or restriction tends, in some degree, to promote or secure the public health, safety, morals or general welfare of the inhabitants of the municipality, and, if such regu-

lation or restriction bears no real or substantial relation to the accomplishment of one of these ends, it cannot be justified as a valid or proper exercise of the police power, and such regulation or restriction is itself unauthorized and void. Hence, any restriction or limitation by any law-making body, under the guise of the police power, limiting the right of the owner to make any lawful use of his property cannot be justified unless such use is or may become, in some way, detrimental to the general welfare of the municipality or to the public health, safety and morals of the inhabitants of the community. If the restriction or limitation upon the lawful use of property goes beyond that, it is a taking of private property for a public use for which compensation must be made and comes within the rule that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U. S. 393 (67 L. Ed. 322, 43 Sup. Ct. Rep. 158, 28 A. L. R. 1321).

It is a mistake to believe that under the law the state or a municipality of the state has, in any case, a choice of exercising either the power of eminent domain or the police power, as it pleases. When it comes to imposing regulations restricting or limiting the lawful use of property, unless such restriction is one which can lawfully be imposed by a proper and valid exercise of the police power, it can only be imposed by the exercise of the power of eminent domain for which compensation must be made, as, otherwise, such restriction would be a taking of the property in violation of the federal Constitution. This is so because of the very nature of our state and national governments and of the division among them of the powers of government, each of which is supreme

within its respective sphere. Upon the adoption of the Constitution of the United States which thereby created a dual form of government, that of the states and that of the federal government, the police powers of the states were not granted to the federal government but were reserved to the states themselves. At the same time and by the adoption of the federal Constitution certain powers were granted to the federal government which, because of the grant, the states were thereafter prohibited from exercising. Among these, upon the adoption of the fourteenth amendment, the power was granted to the federal government to enforce the provision contained in the federal Constitution that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Since each government is supreme within its own sphere, the exercise of these respective powers by the state or by the national government requires that the police powers of the state restricting the use of property should be exercised only when reasonably necessary for the accomplishment of some proper end within the competency of the state, and makes any regulation by the state restricting the owner's right to make a lawful use of his property a violation of the federal Constitution unless such restriction is essential to the accomplishment of such end, in which case the provisions of the federal Constitution do not apply. But, if the restriction is one which, under the guise of the police power, limits the lawful use of property and bears no relation to the welfare of

116 Or.—12

the public or to the public health, safety and morals, so far as the restriction imposes a limitation upon the use of property, it is a taking of private property either for a private use or for a public use without compensation, and, in either event, violates both the state and federal Constitutions; while, if it is a proper exercise of the police power of the state, then the restriction is not a violation of either of said Constitutions. When properly understood, no conflict can arise in the exercise by the states or by the federal government of their respective powers.

In using the words "public health, safety, morals, and general welfare" we do not desire to be understood as attempting to intimate that the state cannot delegate to one of its municipalities the power to enact ordinances embracing regulations designed to promote the public convenience, or the general prosperity, or the good order and security of the inhabitants of the city. We assume that the words used include the convenience, prosperity and good order of the inhabitants of a municipality, and everything essential to their welfare and happiness which, so far as under our form of government, can be exercised by a municipality as a valid and proper exercise of the police power when such powers are delegated to it by the legislature of the state. What we wish to be understood as holding is that a regulation imposed by a municipality restricting the lawful use of property must be designed to promote one of said ends, and that if it is not so designed, the regulation restricting such use is not a valid or proper exercise of the police power, and that any restriction restricting the lawful use of property which is not a valid and proper exercise of the police power is a violation of the federal Constitution.

Within the limits of the powers conferred by the federal Constitution the federal government is supreme: 12 C. J., p. 743. Hence, if the ordinance in question in restricting plaintiffs' use of their own property is not a valid and proper exercise of the police power, it is void because in contravention of the federal Constitution. Whether or not a particular statute or ordinance is constitutional is necessarily a matter of law, and a statute or ordinance must be tested, not by what has been done under it, but by what the law authorizes to be done under its provisions: 12 C. J., p. 786. But, as was said in *Pacific Palisades Assn.* v. *City of Huntington Beach* (Cal. App.), 237 Pac. 538, 540:

"Ordinances having that effect (regulating the business of operating oil wells and prohibiting their operation within delineated areas and districts) must be reasonable, and must be for the purpose of protecting the public health, comfort, safety, or welfare. Every intendment is to be made in favor of the lawful exercise of municipal power making such regulations, and it not the province of courts, except in clear cases, to interfere with the exercise of that authority. But, as was recently said by the Supreme Court of the United States, 'while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.' *Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393, 415 (67 L. Ed. 322, 43 Sup. Ct. Rep. 158, 28 A. L. R. 1321). Therefore, notwithstanding this general grant of power, it is a thoroughly well-settled doctrine that municipal by-laws and ordinances undertaking to regulate useful business enterprises are subject to investigation in the courts, with a view to determining whether the law or ordinance is a lawful exercise of the police power; or whether, under the guise of enforcing police regu-

lations, there has been an unwarranted and arbitrary interference with the right to carry on a lawful business, to make contracts, or to use and enjoy property.'' Citing cases.

Plaintiffs propose to construct upon their said property a one-story concrete and brick building, and when constructed to use the same as a store and a creamery for the sale at wholesale and retail of milk and cream. The effect of the ordinance in question is to absolutely prohibit them from constructing said or any building for said purpose, and from making such use of their said property. The use of property is one of the most essential elements of ownership. As has been said: ''There can be no conception of property aside from its control and use, and upon its use depends its value.'' *Ambler Realty Co.* v. *Village of Euclid,* 297 Fed. 307, 318. Property is more than the mere thing which a person owns. It includes the right to acquire, use and dispose of it, and these essential attributes of property are protected by the federal Constitution: *Buchanan* v. *Warley,* 245 U. S. 74 (62 L. Ed. 149, 38 Sup. Ct. Rep. 6, Ann. Cas. 1918A, 1201, L. R. A. 1918C, 210).

In determining whether the particular restrictions imposed by the ordinance upon plaintiffs' use of their property is a valid exercise of the police power or is a violation of the federal Constitution and therefore void, we copy a statement, with which we are in entire accord, that is contained in the decision of the court in the case of *Goldman* v. *Crowther* (Md.), 128 Atl. 50, 51, as follows:

''This question can be approached by either of two avenues: One, legal; the other, political and sociological. If approached by the former, the validity of the restraints and prohibitions of the ordinance

must depend upon whether they violate certain definite guaranties and assurances found in the federal and state Constitutions and the law of the land. If approached by the latter, the question is to an extent freed from the embarrassment of harmonizing any apparently repugnant provisions of the act with those guaranties, since in such case the end to be accomplished and the benefit to be derived are the main factors to be considered, and the rights of mere individuals may be subordinated to the public convenience upon the principle that such rights are always subject to the paramount authority of the state to subordinate them to what is conceived by those speaking for it to be for the benefit of the state as representing all the citizens.

"Which one of these two methods of approach should be used in this case is a question which goes to the root of our system of government; but without referring further to that, it is sufficient to say that in our opinion we are not at liberty to examine the question from any other than a legal standpoint, and therefore we cannot be controlled in our consideration of the validity of this ordinance by its possible benefit to the public, if in point of fact that benefit is purchased by appropriating the rights and property of individuals to the public use without just compensation, and by the violation of the guaranties of the state and federal Constitutions."

The law upon this question is clea 'y and tersely stated in *Willison* v. *Cooke,* 54 Colo. 320, 328 (130 Pac. 828, 44 L. R. A. (N. S.) 1030), as follows:

"A store building in a residence section of the city is not desirable from an aesthetic point of view; but restrictions for this purpose alone cannot be upheld, as it is only those having for their object the safety and welfare of the public which justifies restricting a use of property by the owner. * * One of the essential elements of property is the right to its unrestricted use and enjoyment; and as we have seen that

use cannot be interfered with beyond what is necessary to provide for the welfare and general security of the public. Enforcing the provisions of the ordinances in question does not deprive the petitioner of title of his lots, he would not be ousted of possession, he would still have the power to dispose of them; but although there would be no actual or physical invasion of his property, he would be deprived of the right to put them to a legitimate use which does not injure the public and this without compensation or any provision therefor. This would clearly deprive him of his property without compensation and without due process of law.''

See, also, *Spann* v. *Dallas,* 111 Tex. 350 (235 S. W. 513, 19 A. L. R. 1387, and annotation in 19 A. L. R., at page 1395, and the cases there cited).

In the case of *Goldman* v. *Crowther, supra,* the question was the validity of an ordinance almost upon all-fours with the ordinance under consideration, and it was held that the ordinance was unconstitutional and void. Applying these fundamental principles to the facts of this case, we conclude that the construction on plaintiffs' property of a one-story concrete and brick store building to be occupied and used for a store and creamery will not, nor is it suggested that it will, increase the fire risks and hazards any more than would the construction of any other building to be used for any of the purposes authorized by the ordinance. The business of carrying on a store and creamery is lawful and if properly conducted at said place cannot be detrimental to the public health, safety, morals or general welfare of the inhabitants of that neighborhood or of the city at large; and, if improperly conducted, by ordinances now in force, the city can prohibit its being thus improperly conducted. The business proposed is one that does not call for the exercise of the police power and any regulation

restricting the use of the property for the purposes proposed is arbitrary, unreasonable and beyond the legislative power of the state or of the municipality, and since this ordinance has no relation to any end within the competency of the state, the restriction imposed by the ordinance comes within the prohibition of the federal Constitution and deprives plaintiffs of a property right without due process of law, and, in so far as it affects plaintiffs' right to use their property for the purposes proposed, it is unconstitutional and void.

We think further that an ordinance which prohibits the occupancy of buildings within a class II residential district in the City of Portland for a baby home, a boys' and girls' aid home, a church, a convent, a greenhouse, a hospital, not used for the treatment of insane or narcotic cases, a hothouse, a library, a monastery, a public service building, a nursery, an old people's home, an orphanage, a parish house, a postoffice, or a railroad station, except when consented to by 50 or more per cent of the adjoining property owners holding property within 200 feet of the property to be thus used, is an unreasonable restriction upon the use of property and it cannot be upheld under any valid exercise of the police power; and further, that where the proposed use by the owner is for either or any of said purposes, all of which are lawful and none of which are detrimental to the welfare of the city or to the inhabitants in the immediate neighborhood thereof, the delegation to such adjoining property owners of the power to determine whether the property may be used for said purposes, or any of them, is an unconstitutional delegation by the city to the property owners of the power to determine whether such use of such property may be made or not.

For those reasons, as well as for the reasons advanced by Mr. Chief Justice McBRIDE, the ordinance in question, in so far as it affects the use of property within class II residential districts for the purposes above stated, is unconstitutional and void, and that to the extent stated the decision of the lower court should be affirmed.